# JACK O. WILSON et ux, v. MID-STATE HOMES, INC.—384 S.W.(2d) 459.

Middle Section. March 27, 1964.

Certiorari Denied by Supreme Court August 28, 1964.

T. A. Greer, Jr., Dunlap, for complainants.

Butler & Green, Nashville, for defendant.

SHRIVER, J. The original bill herein was filed seeking an injunction to restrain execution on a judgment in the General Sessions Court of Sequatchie County and for rescission of a contract of sale of real estate or, in the alternative, for damages for misrepresentation as to the description of said property.

After a hearing the Chancellor dissolved the injunction, dismissed the bill and ordered certain funds that had been paid into the hands of the Clerk and Master by the complainant to be paid over to the defendant.

From this judgment and decree the complainants below, Jack O. Wilson and wife, have appealed and assigned errors.

The bill alleges that on December 2nd, 1960, complainants entered into an agreement with the defendant corporation for the purchase of a frame dwelling and about 15 acres of land, which contract was made exhibit "A" to the bill.

Under said agreement complainants paid defendant $50.00 in cash and agreed to pay $5,025.60 in 72 monthly installments of $69.80 each.

No deed was executed but the rights of the parties were predicated on the sales contract which contained a description of the property.

From the pleadings and the evidence it is shown that complainants originally entered into a contract to purchase the house and 5 acres for about $4,000.00. A short time afterwards, however, they discovered that the house was not located on the 5 acre tract but was located on an adjoining 10 acre tract which was owned by a man named Alford from whom the defendant had taken a deed of trust on the 5 acres and had built a house for him on what they believed to be the 5 acre tract. Subsequently, defendant was purchaser at a foreclosure sale of this property and then entered into the contract of December 2, 1960, with complainants, made exhibit herein, to convey about 15 acres as stated hereinbefore.

It is further averred that complainants, after having taken possession of the property and after having made payments for several months discovered that the description was erroneous and that the boundary line of the adjacent land-owner, instead of being some 41 feet to the rear of their house, actually ran within about 10 feet of it. On discovering this fact complainants immediately informed the defendant who sent one of its agents to consult with them about the matter and they were assured that measures would be taken to correct the situation. However, after waiting several months and continuing their payments, they found that denfendant had done nothing towards correcting the situation they then ceased

making payments. Thereupon, the defendant filed suit in the General Sessions Court of Sequatchie County to regain possession of the property. This suit was continued from time to time as the parties negotiated about a settlement. Finally, however, judgment was entered in favor of the Mid-State Homes, Inc. and, at this juncture complainants filed their bill in the Chancery Court alleging that there were matters of an equitable nature involved and that, therefore, they chose to file their suit in Chancery Court rather than to file a petition for certiorari in the Circuit Court.

The bill prayed for an injunction to restrain the further prosecution of the suit in the General Sessions Court and from proceeding with an execution at law and for $3,000.00 damages for misrepresentation, or, in the alternative, that the contract be rescinded and complainants repaid all sums previously paid under the contract plus the value of the improvements they had made on the real estate, and they prayed for general relief.

In its answer defendant agrees that the contract was entered into as described by complainants and that it was for the amounts and on the terms therein set forth, and further, that no warranty deed or deed of trust was executed but that the rights of the parties were predicated on the contract as set forth in the bill.

The answer proceeds as follows:

"All the balance of the allegations contained in Numbered Paragraph One concerning discovery of error in description, boundary lines, etc., your defendant neither admits nor denies same but demands strict proof of same. Further answering, your defendant would show that it is advised that prior to the contract

of purchase by complainants, the property was surveyed and boundary lines indicated to the defendant and to complainants but that some time thereafter the surveyor made another survey of the property and advised that he had been in error, the boundary line was not as he had previously indicated. That such error removes something less than two acres from the tract to be deeded. Your defendant is advised that the property to be conveyed is in a sparsely settled mountainous portion of the county and has a reasonable commercial value of between $25.00 and 40.00 per acre.''

After denying that there were many communications or conversations between the parties, as alleged, and after reciting some facts and dates with respect to the detainer warrant that was issued in the Court of General Sessions, the answer makes this significant statement,

''It is correct as stated that the defendant's attorney informed complainants' attorney that defendant was willing to in every way comply with the contract and would be willing to make such adjustments as would be right and reasonable and defendants would further show that this is its present attitude.''

The answer then denies that complainants had a valid legal defense to the suit at law and further denies that complainants suffered damages in the amount of $3,000.00 or any other amount.

## THE EVIDENCE

The cause was heard on oral proof before the Chancellor when both complainant, Jack O. Wilson, and his wife testified and introduced several other witnesses in

their behalf. However, the defendant did not introduce any proof. In view of this situation it seems important to review briefly the evidence introduced on behalf of complainants.

Mrs. Wilson testified as to the execution of the contract, the discovery of the mistake in the description and in the location of the house with reference to the 5 acre tract that they originally bought. She then testified that, at the time of the purchase, complainants saw a fence running some 50 feet behind the house and that the underbrush had been cleared away from the back of the house over to this fence. She stated that the Mid-State agent gave the complainant a description of the property showing that the northeast corner of the tract was at a stake set in an old road. Complainants found the stake as described in the old ridge road, which was a small locust post similar to stakes at two other corners of the property as described in the contract of December 2, 1960 and that, based on these representations, the North line passed some 40 or more feet behind their house. After complainants had paid about $1,200.00 on this property, Mr. Crayton Mosley came to them and informed them that the fence behind their house was on his property and not on the line. He told them that the Northeast corner of their tract was not at a stake in the ridge road as described in their contract but was at a tree located some distance South of it. A survey was then made of the property and all the lines were re-run and it turned out that the corner, as Mr. Mosley had said, was not at the stake in the ridge road but at a tree which was so marked, although it was marked so indistinctly that complainants could not find it until it was pointed out to them by Mr. Mosley. From this survey the line was shown

to be only about 10½ feet behind their house instead of 41 feet. Thereupon, complainants informed Mid-State Homes, Inc. that an error had been made and, as alleged in the bill, defendant sent one of its agents out to check the property and some three or four days later this agent informed them that the Mid-State Homes, Inc., would correct the error. After some two months had passed during which time, so far as complainants knew, nothing had been done to correct the error they discontinued the monthly payments. They were again promised that the error would be corrected and this procedure was repeated on several other occasions but, after some months had elapsed, defendant instituted a suit to recover the property. She testified that the negotiations were then carried on for several months between them and, on every occasion, defendant's representatives promised to correct the error. She testified that when complainants had the property lines resurveyed they not only found that the beginning corner was not at the post or stake described in the contract but that one or two of the other lines were in error and that the description was such that if followed it would not enclose the land. She stated that during the time they remained there they purchased material costing $65.00 and did the labor themselves to improve the house which was in addition to about $1,-200.00 in payments made by them. She further testified that, in her opinion, the property was worth $500.00 less with the North line passing 10½ feet back of the house instead of 41 feet and that if she and her husband had known of the true location of the North line they would not have entered into the contract at any price. She testified that she and her husband relied upon the description and representation in the contract which was drawn by defendant; after the institution of the suit in Chancery

Court they paid under the orders of the Court $698.00 into the Clerk's Office, making a total investment by them in the property of about $2,500.00; that they had lived in the house about 8 or 9 months since it was unfinished; that they had no water there, but if the error had been corrected they planned to drill a well so as to have water in the house.

Mr. Crayton Mosley testified that his wife inherited a long strip of land which bounded the land in question. He corroborated Mrs. Wilson as to the facts stated by her about his pointing out to her the tree which was the true corner instead of the stake in the ridge road as called for by the contract. He testified that Mrs. Wilson and her husband and their attorney had contacted him about purchasing two acres running back of the house but he did not wish to sell unless they would buy the entire 19 acres at $40.00 an acre.

The next witness was Mr. Ivan Condra. He had been County Surveyor in Sequatchie County for about four years. At the request of Mr. and Mrs. Wilson he surveyed the property described in the contract of December 2, 1960 and stated that, beginning at the locust stake in the ridge road as described in the contract, the line would run about 41 feet behind the house. But he found that the Northeast corner of the property was, in reality, located on a marked tree several feet South of the locust post in the ridge road. On running this line from the tree at the Northeast corner he found several other marked trees on the line indicating that it had been located there for many years and he showed where the correct line passed only a short distance behind the house. He further testified that he found that two other calls in the description in said contract were wrong and that from the descrip-

tion in the contract it was impossible to make a survey of the entire property since it would not enclose any land.

Mr. John F. Thruler, testified on behalf of complainants saying that he purchased a farm in the first part of 1960 lying East of the Mosley strip of land and that of the complainants, and that when he checked his boundary lines he found the locust post set in the old ridge road and believed it to be the common boundary corner between himself and Mr. Mosley and he constructed a fence from this corner along his Eastern boundary line. However, when a survey was later made it revealed that this corner was not accurately located and it should have been located at a marked tree several feet South of the post in the ridge road. He corroborated Mr. and Mrs. Wilson as to where the line passed back of their house and where it would have passed if the description had been correct.

The testimony of complainant, Jack O. Wilson, was substantially in line with that of Mrs. Wilson. He estimated that the value of the improvements that he and his wife had made on the house while living there amounted to approximately $700.00, saying that, in his opinion, the property was worth at least $500.00 less with the line running approximately 10 feet behind the house than it would have been had it run 41 feet behind the house as located in the contract.

He corroborated Mrs. Wilson in stating that the representative of the defendant unconditionally promised to correct the error. He also testified that the fair rental value of the house in its unfinished condition was about $10.00 a month.

This was all the evidence introduced in the cause, and, at the conclusion of complainants' proof defendant's

counsel announced that it would not introduce any proof and moved to dismiss complainant's bill.

## CONCLUSIONS OF LAW AND FACT

On June 22, 1963 the Chancellor announced his decision by a memorandum opinion sustaining defendant's motion and dismissing complainants' bill, and a decree in compliance therewith was entered.

In reading the Chancellor's opinion we are impressed that many of the facts found by him and relied on in disposing of the case are facts set forth in defendant's answer but which were not supported by any evidence that appears in the record before us.

It is well to call attention to the fact that the original bill expressly waived the defendant's oath to the answer. This being true Section 21-110, T.C.A. is applicable. This statute provides as follows:

"The plaintiff may, in his bill, waive an answer from the defendant under oath, in which case the answer shall be entitled to no more weight than the bill as evidence."

In Gibson's Suits in Chancery, (Crownover) Section 375, it is said: "The result is, an answer, the oath to which is waived, is a mere pleading, whose exclusive function is to make an issue of fact, or a mixed issue of law and fact." Citing cases.

Defendant does not deny that the description in the contract was erroneous but, on the other hand, admits that said description was relied on by both parties and that it was later discovered to be erroneous. It also appears from the evidence that the stake in the ridge road referred to in the description in the contract, had been

relied on by an adjacent landowner as being the corner, with the result that he built a fence from that point back of the house in question, and, although it does not appear who it was that cleared off the underbrush from the house to the fence, it does appear that this was the condition existing when the place was sold to complainants. Hence, they had every reason to suppose that the line was where it was represented to be by the contract.

As was said in Bigham v. Madison, 103 Tenn. 358, 52 S.W. 1074, under a bill averring a certain state of facts as claiming rescission for fraud, the Court may deny rescission for the alleged fraud, and grant it, if the facts averred and proved justify it, on the ground of mutual innocent mistake. To like effect is a statement of the general rule in 23 Am.Jur. page 757, where it is said that misrepresentation made without knowledge of its falsity is "legal fraud". And in the same text at pages 760-777, it is said recital of a fact in a written contract which is not true will constitute a misrepresentation and may be treated as a mutual mistake in equity.

In his memorandum opinion the Chancellor states that the basis for relief in the bill is an allegation that prior to the execution of the contract an agent of the defendant purported to show the complainants the exact boundary lines and that, if this were true, the Court was of opinion that such a representation made by the defendant and acted upon by complainants would be a sound basis for the relief sought in the bill but that this was not the fact.

The opinion further states:

"It is urged and it seems to be conceded by all parties that there was a misunderstanding as to where the true line was located between the property described in

the contract and that of the adjoining property owner, Mr. Mosley. According to the testimony the surveyor made two different locations of this line. The fact alone that a mistake occurred is not the basis upon which relief may be had. Before the Court is warranted in granting relief because of a mistake, such must be mutual or fraudulent.''

■ While it is true that the original bill states that prior to the sale an agent for the defendant corporation purported to show complainants the exact boundary lines of the real estate being conveyed, that is not the sole basis for the relief sought because the bill makes it clear, as does the proof in support thereof, that the complainants relied on the description written into the contract by the defendant and that, in relying on said description, they were misled as to where the true property line was. While we agree with the statement of the Chancellor that, in order to warrant relief because of mistake, such mistake must be mutual, we cannot agree with his conclusion from the facts appearing in the record.

■ In other words, if the defendant knew when the contract was signed that the fence behind the house was on the other man's property and that the stake described in the contract was not the true corner, then this amounted to a misrepresentation and fraud on the complaint. On the other hand, if both the defendant and complainants acted on the assumption that the stake referred to in the contract was the correct location of the corner and proceeded on that basis, it was a mutual mistake.

We are convinced that the equities in this case necessitate either rescission of the contract or the awarding of such damages to the complainants as the facts and circumstances will warrant.

Inasmuch as rescission is a matter that addresses itself largely to the discretion of the Chancellor, and, inasmuch as the Chancellor did not determine this question as opposed to that of awarding damages incurred by the complainants, a remand for such determination and award will be decreed.

The Chancellor ordered the money that had been paid into Court pending the litigation paid over to the defendant, leaving the complainants completely without relief in spite of the proposition set forth in the answer that it was the position of the defendant that its agents and representatives were willing to comply with the contract in every way and to make such adjustment as would be right and reasonable. We think this also was error.

It results that the assignments of error are sustained and the cause is reversed and remanded to the trial Court for such other proceedings as are necessary and proper consistent with this opinion.

Reversed and remanded.

Humphreys and Chattin, JJ., concur.