Martin D. ROBINSON and wife, Marizona B. Robinson, Plaintiffs-Appellees,

v.

Luther W. BROOKS and wife, Joy T. Brooks, d/b/a Brooks Custom Homes, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

Nov. 14, 1978.

Certiorari Denied by Supreme Court Feb. 20, 1979.

James R. Omer, Omer, Ellis & Brabson, Nashville, for defendants-appellants.

Jack Green, Green & Womack, Nashville, for plaintiffs-appellees.

LEWIS, Judge.

OPINION

From the judgment of the Chancellor in rescinding a real estate conveyance and awarding judgment to the appellees in the sum of $122,015.00, the appellants have appealed and assign four (4) errors:

I

The Court erred in finding that the plaintiff was entitled to rescission of the land purchase contract.

II

The Court erred in failing to direct a verdict for the defendant at the conclusion of plaintiffs' proof.

III

The Court erred in finding the plaintiffs [sic] guilty of negligence for failure to make a proper soil analysis prior to construction.

IV

The Court erred in failing to consider the plaintiffs came into Court with unclean hands and that they made no effort to mitigate their damages.

Defendants, Luther W. Brooks and his wife, Joy T. Brooks, are in the business of developing and subdividing land on which they build homes for resale. In the course of business, defendants built a home on Lot 5 in Country Road Estates, a subdivision in Williamson County.

Plaintiffs purchased this new home and lot from defendants in December of 1975 for $140,000.00. The deed contained the standard warranties and no further repre-

sentations were made to plaintiffs concerning the quality of construction or suitability of the building site.

Plaintiffs occupied the home in January of 1976. During the first year, normal settling produced some cracks in the house.

However, in February of 1977, shifting of the soil on the lot caused drastic movements of the house which made it appear to be leaning. Defendants were notified and placed sump pumps under the house. Besides some additional uncompleted work on a drainage trench to drain water from the house area, defendants took no further steps to remedy the condition. The house continued to crack and lean. In order to prevent further erosion of the property, plaintiffs installed gutters on the home.

On June 24, 1977, plaintiffs filed a complaint in the Chancery Court for Williamson County, seeking rescission of the sale contract and damages.

On June 29, 1977, plaintiffs employed Geological Associates, Inc. for an investigation of the apparent landslide on the property. Plaintiffs paid $5,405.61 for the investigation and report.

On July 26, 1977, plaintiffs deemed it necessary to vacate the home and have not returned.

The report of Geological Associates, Inc. verified the occurrence of a landslide on the site and recommended a plan to stabilize the house at a cost in excess of $47,000.00.

No proof was offered as to the cost of repairing the house. However, it is clear from the record that such expenditures would be fruitless unless the landslides were first controlled.

It was the plaintiffs' contention in the Chancery Court that the defendants were negligent in failing to obtain the advice and assistance of soil scientists or qualified engineers so that the likelihood of a landslide could have been anticipated and avoided. The defendants contended that they exercised ordinary care in the selection and preparation of the building site and in the construction. Defendants had employed an engineer who met the requirements necessary to obtain approval of the subdivision by the Williamson County Planning Commission.

The Chancellor found that defendants had been negligent in assuming, without expert advice of any kind, that Lot 5 was a suitable and safe building site.

Our discussion of defendants' assignment I will necessarily dispose of assignments II and III.

The issue raised by assignment I goes to a purchaser's ability to rescind a contract because of damage to a home constructed on an inappropriate soil base which, subsequent to construction and sale, was extensively damaged by a landslide of that soil.

That the doctrine of caveat emptor is fast becoming obsolete is recognized by many authorities. *See Cooper v. Cordova Sand and Gravel Co., Inc.*, 485 S.W.2d 261 (Tenn. App.1971) and *Combs v. Hurst*, No. 82 Hamblen Law, Tenn.App.E.D. (filed Knoxville December 6, 1977), for comprehensive discussion of the inapplicability of caveat emptor in land-sale contracts.

However, rescission of a contract is not looked upon lightly. It is available only under the most demanding circumstances.

At 12 C.J.S. *Cancellation of Instruments* § 27b.(1) it states:

Where parties have apparently entered into a contract evidenced by a writing, but owing to a mistake of their minds did not meet as to all the essential elements of the transaction, so that no real contract was made by them, then a court of equity will interpose to rescind and cancel the apparent contract as written, and to restore the parties to their former positions, the rule being the same whether the instrument relates to an executory agreement or to one which has been executed. Furthermore equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction. It is not essential that either party should have been guilty of fraud. (footnotes omitted) [*Id.* at 978.

See generally *King v. Dolittle*, 38 Tenn. (1 Head) 77 (1858).]

At 17A C.J.S. *Contracts* § 418(2) it states:

In order to authorize relief for mistake the mistake generally must have been mutual, and it must have been material, and not due to the complainant's negligence; and complainant must show injury. (footnotes omitted) [*Id.* at 513. *See generally Wilson v. Mid-State Homes, Inc.*, 53 Tenn.App. 520, 384 S.W.2d 459 (1964).]

The character of a mistake allowing for a rescission of contract is discussed at 17 C.J.S. *Contracts* § 135:

The character of the mistake which will enable one to avoid his contract includes a mistake resulting from unconscious ignorance or forgetfulness of the existence or nonexistence of a fact material to the contract, or transaction, and a mistake which relates in a material way to the subject matter of a contemplated contract may prevent its completion as being without mutual consent. Whether a mistake concerns a thing material to the contract must of necessity depend on the facts and circumstances in the situation being considered. (footnotes omitted) [*Id.* at 868–69.]

This Court has applied these principles in discussing a decision in a land-sale contract in *Wilson v. Mid-State Homes, Inc., supra.* There, the vendees sued for rescission of an executed contract because of a mistake in the location of the home. It was on the lot next to the one described in the contract.

Judge Shriver, writing for the Court, noted:

"[u]nder a bill averring a certain state of facts as claiming rescission for fraud, the Court may deny rescission for the alleged fraud, and grant it, if the facts averred and proved justify it, on the ground of mutual innocent mistake." *Id.* 384 S.W.2d at 463.

Further:

"In other words, if the defendant knew when the contract was signed that the fence behind the house was on the other man's property and that the stake described in the contract was not the true corner, then this amounted to a misrepresentation and fraud on the complaint [sic]. On the other hand, if both the defendant and the complainants acted on the assumption that the stake referred to in the contract was the correct location of the corner and proceeded on that basis, it was a mutual mistake.

"We are convinced that the equities in this case necessitate either rescission of the contract or the awarding of damages to the complainants as the facts and circumstances will warrant." *Id.* 384 S.W.2d at 464.

The case was remanded for determination on the matter of rescission.

Additional guidance is found in the recent unreported case of *Combs v. Hurst*, No. 82 Hamblen Law, Tenn.App.E.D. (filed Knoxville December 6, 1977). There, the complainant sought and received damages resulting from sub-standard workmanship on the house and improper compaction of the soil.

Judge Goddard, writing for the Court, said:

"It is clear in this case that an ordinary inspection by most home buyers would not have revealed the weakness inherent in this structure. The record does not indicate that the plaintiff, a truck driver by profession, had any special knowledge that would have made his inspection any more searching or meaningful than that of an ordinary buyer." *Id.* at 5.

The Court affirmed the holding of the Circuit Judge, who had found:

"[t]hat Hurst, builder-vendor of the house, knew or should have known that these defects, which in the main arose after the purchase, were likely to occur and that plaintiffs were entitled to their reasonable expectations at the time of purchase." *Id.* at 1.

Although the facts at hand do not rest solely on the actual fill of Lot 5, the nature and consequence of the occurrence are of such gravity that the end-result is the same.

Plaintiffs purchased a home built on an improper soil base and fill which was the cause of the resulting damage.

The soil on Lot 5 is primarily made up of colluvial soil. The evidence adduced at trial from Geological Associates, Inc. explains that:

It is the nature of the colluvial soil, because of the manner by which it develops, to be poorly consolidated and relatively porous. Although the shear strength of the colluvium is generally lower than that of the underlying residual soil, our experience and the laboratory data indicate that the strength of the colluvial soil varies greatly from place to place, depending primarily upon its moisture content. When the soil is relatively dry, it usually maintains a moderate degree of strength, but when saturated its shear strength is drastically reduced. Consequently, because of the colluvial soil's high permeability, the degree of saturation and shear strength fluctuate rapidly in response to change in the moisture content.

The report goes on to state:

Although we believe that failure of the natural slope, initiated by the factors referred to above, is the major reason for distress within the lawn and the house, we also point out that portions of the house are founded on earthfill of undesirable quality. Two of our inspection trenches revealed that the earthfill placed during construction of the house was not properly densified and contains fragments of wood and other building materials.

There was adequate indication at the time of building to put defendants on their guard.

As the Chancellor recognized:

"According to the expert witnesses on both sides, the cause of the damage to the house is that a large area of land surrounding the house had started sliding down the hill. The experts were also in essential agreement that the substantial possibility of such a landslide would have been predicted by a competent soil scientist or engineer if such expert had been consulted prior to the construction. The nature of the soil (colluvial), the steepness of the slope, and the existence of springs on the ridge above the lot, were a combination of factors indicating the hazard of a landslide. The clearing of the lot, the weight of the house, and the further concentration of water on and in the ground by reason of the existence of the house, appeared to be contributing and percipitating factors that brought on the landslide.

". . . It is a matter of common knowledge that landslides occur, that they are likely to occur on steep slopes, especially where there is a flow of water underground [sic]. It is also common knowledge that springs indicate the presence of underground water, that springs near the top of a ridge are uncommon, and that water flows downhill. These visible characteristics of the land surrounding the building site were observed by the defendants or, in the exercise of ordinary care, should have been observed by the defendants. In the opinion of the Court, the failure of the defendants, under the circumstances, to obtain expert advice was a lack of ordinary care. Under the present state of the law, as understood by this Court, the plaintiffs as purchasers from the builders were entitled to assume that the builder had taken ordinary precautions to assure that both the site and the structure were ordinarily safe and sound."

Therefore, it is clear that the plaintiffs have shown all the elements required to qualify for rescission of this contract.

The mistake as to the safeness and soundness of the house and Lot 5 was mutual. Because of the lack of sufficient testing at the site, defendants were unaware of the dangerous nature of the colluvial soil or content of the fill. Plaintiffs, lacking any specialized construction or real estate knowledge, cannot be held to have the sophisticated knowledge required to recognize these difficulties upon a mere visual inspection of the premises. Both parties, given

the state of their knowledge at the time of contracting, were acting under the assumption that the home was safe and sound, although defendants, as builders-vendors of the house, should have known of the defects existing at the time and the potentiality of future damage.

The mistake was material to the object of the contract. Plaintiffs and defendants contracted for the purchase and sale of a home which the plaintiffs were entitled to assume was ordinarily safe and sound. The end results, due to a mutual mistake of the facts at the time of contracting, is that as of this time the home is unfit for safe habitation. The plaintiffs were entitled to their reasonable expectations at the time of purchase.

The resulting damage to the home was not due to plaintiffs' negligence and the record is replete with evidence of injury to the home and site.

Assignments I, II and III are without merit.

Defendants' assignment of error IV is not substantiated by the record. Defendants allege that plaintiffs came into Court with unclean hands because they did not take any action to mitigate damages.

It is a well accepted axiom of equity requiring no citation that one must do equity to get equity.

Here, the record contains ample evidence of plaintiffs' attempts to prevent damage to the house after first discovering that a problem existed.

The defendants were notified by the plaintiffs that difficulties were beginning to develop in the home. In fact, defendants came to the house and installed sump pumps under it.

On another occasion plaintiffs had guttering put on the house at their own expense after being advised to do so by the Defendant Luther W. Brooks.

Furthermore, plaintiffs incurred a $5,405.61 expense in hiring Geological Associates, Inc. to investigate the problem and recommend a solution.

Contrary to the defendants' contention, the record shows that plaintiffs did take reasonable steps to rectify the problems occurring to the house as best they understood them.

This assignment is likewise without merit.

The judgment of the Chancellor is affirmed with costs to the defendants.

SHRIVER, P. J., and TODD, J., concur.