# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **CHARLEY CLUNAN COMPANY, INC.** | ) | Shelby County Chancery Court |
| | ) | No. 106613-1 R.D. |
| Plaintiff/Appellee. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9704-CH-00087 |
| | ) | |
| **JOYCE JEANETTE MARTIN**, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

**FILED**

**September 29, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable Neal Small, Chancellor**

**Mark J. Grai**, THE WINCHESTER LAW FIRM, Memphis, Tennessee
Attorney for Defendant/Appellant.


**Cary R. Califf**, Memphis, Tennessee
**Linda J. Mathis**, Memphis, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendant Joyce Jeanette Martin appeals the trial court's order which awarded Plaintiff/Appellee Charley Clunan Company, Inc., a judgment of $35,200 in its action to recover a real estate commission. We affirm the judgment because we have determined that the record supports the trial court's ruling that Martin breached the terms of the parties' exclusive listing agreement when she sold the property to a third party without paying the Company a commission.

Martin formerly owned a building located at 115 South Front Street in Memphis. In January 1995, Michael Matthews, the Company's president and principal broker, prepared an exclusive listing agreement under which the Company agreed to list Martin's property for sale with a listing service and to use its best efforts to find a purchaser for the property. Matthews prepared the agreement at the direction of Martin's son, Wayne Martin. Wayne Martin then took the listing agreement to Martin to obtain her signature. Although the listing agreement subsequently was dated February 25, 1995, it was not clear whether Martin signed the agreement in January or February 1995. In any event, Martin signed the listing agreement, which was effective from February 25, 1995, until January 31, 1996. The listing agreement provided for a sales price of $625,000 and a standard commission of six percent (6%).

At the time the agreement was executed, both Martin and Matthews mistakenly believed that Wayne Martin still had his real estate broker's license. Wayne Martin previously had transferred his license to the Company, and he maintained an office at the Company's place of business. Around March 1995, Matthews learned that Wayne Martin's license had not been renewed after December 31, 1994, due to his failure to maintain the required insurance.

Despite the existence of the exclusive listing agreement, several advertisements for sale of the property appeared in a Memphis newspaper, *The Commercial Appeal*, during the spring of 1995, beginning with the February 19, 1995, edition and ending with the edition dated April 16, 1995. These ads were purchased by Martin, but it was not clear whether she purchased them prior to or after entering into the listing agreement with the Company.

In May 1995, Martin attempted to cancel the exclusive listing agreement. In a letter to Matthews dated May 12, 1995, Martin explained that she was "very disappointed with the

promptness with which you all have been to work this listing." Approximately one week later, Martin entered into a sales contract to sell the property to Renaissance Investments for a total purchase price of $450,000. Renaissance Investments was not one of the prospective purchasers to whom Matthews had shown the property.

When Martin refused to pay the broker's commission due under the listing agreement, the Company filed this action against Martin seeking to recover its commission. In her answer, Martin raised several defenses, including the defenses of constructive fraud and mistake. In support of these defenses, Martin alleged that she entered into the exclusive listing agreement based upon the Company's representations that Wayne Martin would be the broker who handled the sale of the property and who received the commission from the sale. Alternatively, Martin alleged that she terminated the listing agreement prior to her sale of the property based on the Company's failure to perform its obligations under the agreement.

At trial, the evidence was disputed as to whether the listing agreement was executed by the parties with the understanding that Wayne Martin would handle the ultimate sale of the property. Martin testified that she entered into the listing agreement only because she understood that Wayne Martin still had his broker's license and that he would be the broker handling the sale. Matthews, on the other hand, testified that Wayne Martin was too busy with his landscaping business to market Martin's property. Accordingly, Matthews proceeded to market the property himself. Wayne Martin did not testify, although he had been subpoenaed by Martin.

The evidence also was disputed as to whether the Company had breached the listing agreement by failing to attempt to sell the property. At trial, Martin took the position that Matthews had made no efforts to sell the property, other than to place a small sign in the front window of the building. Matthews testified that, in addition to placing the sign in the window, he (1) listed the property with the Multiple Listing Service, (2) showed the property to several prospective purchasers, (3) mentioned the property to several clients as an investment opportunity, and (4) ordered a banner to be placed on the back of the building during Memphis in May festivities.

At the trial's conclusion, the trial court rejected the defenses raised by Martin and

entered a judgment in favor of the Company in the amount of $35,200. This amount included

$26,400 in broker's commissions and $8,800 in attorney's fees. On appeal, Martin presents the

following issues for this court's review:

> 1. Did the Chancery Court [err] in failing to hold that the Agency Listing Contract was null and void on the basis of constructive fraud or mistake?
>
> 2. Did the Chancery Court [err] in failing to find that Clunan Company's non-performance under the Agency Listing Contract was an adequate ground for Ms. Martin's termination of that agreement?

Our review of the trial court's judgment in this non-jury case is governed by the

Tennessee Rules of Appellate Procedure, which provide that, in civil actions, the appellate court's

review of the trial court's findings of fact "shall be *de novo* upon the record of the trial court,

accompanied by a presumption of the correctness of the finding, unless the preponderance of the

evidence is otherwise." *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984) (quoting T.R.A.P.

13(d)). Under this standard, when a conflict in testimony requires the trial court to make a

determination regarding the credibility of a witness or witnesses, such a determination is "binding

on the appellate court unless from other real evidence the appellate court is compelled to conclude

to the contrary." *Hudson v. Capps*, 651 S.W.2d 243, 246 (Tenn. App. 1983).

With this standard in mind, we first conclude that the defense of constructive fraud

is inapplicable under the facts of this case. In *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904

(Tenn. 1976), our supreme court explained the basis for the doctrine of constructive fraud:

> The doctrine of constructive fraud is recognized in this state as being a principle of equity. See 2 Gibson, *Suits in Chancery*, §§ 982-984 (Crownover 1956). Although it has been applied in a variety of cases, ordinarily, as between private parties, the doctrine has been employed where there has been an abuse of a fiduciary or confidential relationship between the parties. It has particularly been used for the purpose of canceling or rescinding transactions where there has been an overreaching or undue advantage taken between parties who are not dealing at arm's length. See *Mackie v. Fuqua*, 14 Tenn. App. 176 (1931); *Bank of Blount County v. Dunn*, 10 Tenn. App. 95 (1929).

*Land Developers v. Maxwell*, 537 S.W.2d at 918; *see also* Henry R. Gibson, *Gibson's Suits in Chancery* § 388, at 380 (William H. Inman ed., 7th ed. 1988) (indicating that constructive fraud may arise where person occupying position of special trust and confidence towards other party, such as relationship of agent and principal, obtains gift or unduly advantageous contract).

We recognize that "[r]eal estate agents are fiduciaries who are in a confidential relationship with their principals." *Wyner v. Athens Utils. Bd.*, 821 S.W.2d 597, 598 (Tenn. App. 1991). In the present case, however, no evidence was presented at trial to show that the Company was guilty of overreaching in its transaction with Martin or that the Company took undue advantage of Martin. Accordingly, we hold that the trial court property rejected Martin's constructive fraud defense.

We likewise conclude that the evidence does not preponderate against the trial court's decision to reject Martin's defense of mutual mistake. In order to establish her entitlement to rescission of the listing agreement based on mutual mistake, Martin was required to establish (1) that the mistake was mutual; (2) that the mistake related to a material fact; (3) that the mistake was not due to Martin's negligence; and (4) that the mistake injuriously affected Martin. *Loveday v. Cate*, 854 S.W.2d 877, 880 (Tenn. App. 1992); *Robinson v. Brooks*, 577 S.W.2d 207, 208-09 (Tenn. App. 1978). We believe that the trial court properly rejected this defense based on Martin's failure to demonstrate that the parties' mistake related in a material way to the subject matter of the parties' contract. *See Robinson v. Brooks*, 577 S.W.2d at 209.

The evidence was undisputed that, at the time they executed the listing agreement, both parties mistakenly believed that Wayne Martin had a real estate broker's license. Nevertheless, the parties also presented evidence from which the trial court could have found that this mistake was not material to the parties' agreement. Although Martin testified that she executed the listing agreement with the understanding that her son would be the broker handling the sale, the evidence showed that Martin never discussed such a provision with Matthews prior to executing the listing agreement. Wayne Martin failed to corroborate Martin's testimony that his participation was a material term of the agreement because he did not testify at trial, although he had been subpoenaed as a witness by Martin. Moreover, the listing agreement itself failed to support Martin's claim that

the agreement was executed with the understanding that Wayne Martin would be the broker handling the sale. The agreement was executed by Michael Matthews and made no mention of Wayne Martin. In executing the agreement, Martin specifically agreed to a provision whereby she authorized the Company to "appoint subagents and to authorize said subagents to perform duties" under the agreement.

Finally, we reject Martin's remaining argument that she properly terminated the listing agreement based upon the Company's failure to perform. After considering the conflicting evidence presented at trial, the trial court specifically found that the evidence did not support this defense. This evidence included Matthews' testimony that he placed a "For Sale" sign in the front window of the building, listed the property with the Multiple Listing Service, showed and promoted the property to several prospective purchasers, and ordered a banner to be displayed during Memphis in May. Inasmuch as our own review of the record fails to compel a contrary result, we affirm the trial court's ruling on this issue. *See Hudson v. Capps*, 651 S.W.2d at 246.

The trial court's judgment is affirmed and this cause remanded for further proceedings. Costs of this appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)