IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2008 Session

## CARL WILLIAMS ROGERS, M.D. v. STATE VOLUNTEER MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Wilson County**
**No. 06166      C.K. Smith, Chancellor**

_____

**No. M2007-01599-COA-R3-CV - Filed May 2, 2008**

_____

This case involves an endorsement to a medical malpractice insurance policy. The physician insured under the policy brought a declaratory judgment action seeking rescission of the endorsement based upon a mutual mistake of fact. We affirm the decision of the trial court dismissing the physician's case for failure to state a claim upon which relief can be granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Matthew R. Zenner and Malcolm L. McCune, Nashville, Tennessee, for the appellant, Carl Williams Rogers, M.D.

L. Webb Campbell, II and Phillip F. Cramer, Nashville, Tennessee, for the appellee, State Volunteer Mutual Insurance Company

**OPINION**

Dr. Carl Rogers is a board-certified radiologist licensed to practice in Tennessee, North Carolina, and Kentucky. Dr. Rogers is semi-retired but continues to work occasionally. He maintained a reduced-premium medical malpractice insurance policy with State Volunteer Mutual Insurance Company ("State Volunteer") for incidents after July 1977. The reduced premium was based upon a reduced practice limited to 50 hours or less per month. Under its original terms, the policy's territory included the entire United States as well as other areas.

In 2002, Advanced Diagnostic Imaging ("ADI"), a radiology practice in Evansville, Indiana, contacted Dr. Rogers and asked him to work for ADI on a temporary basis to provide radiology services at St. Joseph's Hospital in Huntington, Indiana. Under the agreement between Dr. Rogers and ADI, ADI was to secure medical malpractice coverage for Dr. Rogers with Medical Protective Company ("Medical Protective") as to his work in Indiana. Believing that ADI had secured

malpractice coverage for his work in Indiana, Dr. Rogers contacted State Volunteer. In his letter, Dr. Rogers assured State Volunteer that his work outside of Indiana, for which he remained under State Volunteer coverage, would not require more than 50 hours a week. On March 10, 2003, Dr. Rogers and State Volunteer entered into the following policy endorsement:

> It is hereby understood and agreed that coverage is specifically EXCLUDED under this policy for medical incidents arising out of the rendering of, or failure to render, professional services IN THE STATE OF INDIANA. This exclusion is in consideration of the reduced premium charged hereunder, and based on the understanding that the named insured has other coverage for such medical incidents.

This endorsement took effect as of January 14, 2003.

In March 2005, Dr. Rogers was named as a defendant in a medical malpractice lawsuit arising out of treatment rendered by him in Indiana. When he contacted Medical Protective, Dr. Rogers learned for the first time that ADI had not secured coverage for him with Medical Protective. Dr. Rogers then contacted State Volunteer seeking coverage; State Volunteer denied coverage based upon the endorsement.

Dr. Rogers filed the instant lawsuit on May 2, 2006, seeking a declaratory judgment "that the endorsement was the result of a mutual mistake of fact, and that Dr. Rogers is therefore entitled to have the endorsement rescinded and the original terms of the Policy enforced."[1] On May 7, 2007, State Volunteer filed a motion to dismiss on three grounds: (1) failure to state a claim as a matter of law based on mutual mistake; (2) judicial estoppel on the basis that Dr. Rogers' position in this lawsuit was inconsistent with his position in an Indiana lawsuit against ADI; and (3) impropriety of the action under the Declaratory Judgment Act. The court granted State Volunteer's motion to dismiss for failure to state a claim as a matter of law.

**Analysis**

In reviewing a trial court's ruling on a motion to dismiss under Tenn. R. Civ. P 12.02(6), we must "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A Tenn. R. Civ. P. 12.02(6) motion challenges "the legal sufficiency of the complaint, not the strength of the plaintiff's proof." *Id.* In accordance with Tenn. R. App. P. 13(d), we review the trial court's legal conclusions de novo with no presumption of correctness. This court must determine whether the facts set forth in the complaint make out a claim for relief as a matter of law.

A contract is generally interpreted and enforced as it is written, even though its terms may appear harsh and unjust. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991).

---

[1]On May 3, 2006, Dr. Rogers filed a lawsuit against ADI in Indiana for breach of contract, negligence, negligent misrepresentation, constructive fraud, promissory estoppel, and indemnity.

However, rescission[2] of a contract may be ordered upon the ground of mutual mistake. *Id.*; *Wilson v. Mid-State Homes, Inc.*, 384 S.W.2d 459, 464 (Tenn. Ct. App. 1964). A mutual mistake of fact can be a ground for relief if three conditions are met: (1) the mistake relates to an issue material to the transaction, (2) the mistake did not result from the plaintiff's negligence, and (3) the mistake resulted in injury to the plaintiff. *Robinson v. Brooks*, 577 S.W.2d 207, 209 (Tenn. Ct. App. 1978). The mistake must relate to the essential elements of the contract:

> "Where parties have apparently entered into a contract evidenced by a writing, but *owing to a mistake of their minds did not meet as to all the essential elements of the transaction, so that no real contract was made by them,* then a court of equity will interpose to rescind and cancel the apparent contract as written, and to restore the parties to their former positions."

*Id.* at 208 (quoting 12 C.J.S. *Cancellation of Instruments* § 27b(1)) (emphasis added). The determination as to whether a mistake relates to a material fact depends upon the facts of a particular case. *Id.* at 209.

The mutual mistake of fact identified by Dr. Rogers in the present case is the assumption by both parties that Dr. Rogers was covered under another medical malpractice policy with Medical Protective. We do not consider this mistake to be material to both parties. Certainly the supposed existence of coverage with another malpractice carrier was the motivation for Dr. Rogers to request the endorsement to his policy with State Volunteer. As to State Volunteer, however, this fact was not a material part of the transaction. State Volunteer essentially agreed to continue to cover Dr. Rogers at the same reduced premium rate with the understanding that it would not be responsible for liability arising out of incidents in Indiana. The existence or nonexistence of coverage for Dr. Rogers with another company was not a key consideration to State Volunteer. There was a meeting of the minds regarding the essential terms of the new policy created by the endorsement. Both parties received the bargain they had contemplated.[3]

---

[2] We note that most of the cases cited by the parties in this case involve the remedy of reformation of the contract. Reformation is appropriate when the contract fails to memorialize the actual agreement between the parties, for example, due to a clerical error. *See Cincinnati Ins. Co. v. Fred S. Post, Jr., Co.*, 747 S.W.2d 777, 778 (Tenn. 1988). However, "reformation must yield to rescission where the error is in the substance of the bargain, not in its expression." 27 RICHARD A. LORD, WILLISTON ON CONTRACTS § 70:35 (4th ed. 2003 & Supp. 2007).

[3] We also note that Tennessee courts have recognized the concept of allocating the risk of mistake as set forth in the RESTATEMENT (SECOND) OF CONTRACTS. *Atkins*, 823 S.W.2d at 553. Section 154 of the RESTATEMENT provides:
A party bears the risk of a mistake when
(a) the risk is allocated to him by agreement of the parties, or
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
RESTATEMENT (SECOND) OF CONTRACTS § 154. We are not aware of any Tennessee cases applying subsection (b) or (c) of section 154. In the present case, these subsections support the conclusion we have reached.

We therefore conclude that the trial court properly dismissed Dr. Rogers's declaratory judgment action for failure to state a claim as a matter of law. [4]

Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[4]It also does not appear that the remedy of rescission would result in the relief desired by Dr. Rogers. He is arguing for the rescission of the endorsement excluding coverage for incidents in Indiana, not for the rescission of the entire insurance contract. The remedy of rescission is not available to rescind only part of a contract unless that part is severable from the rest of the contract. *James Cable Partners, L.P. v. Jamestown*, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991). Based upon the facts alleged in the complaint, there is no indication that the endorsement is severable from the rest of the insurance contract.