IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2020 Session

**JULIE CLARK v. JEFFREY GIVENS, ET AL.**

**Appeal from the Circuit Court for Dickson County**
**No. 2017-CV-50     Larry J. Wallace, Judge**

_____

**No. M2019-01693-COA-R3-CV**

_____

This case involves an oral contract for construction services at a residential home.  The parties agreed for the contractor to make various improvements to the property, including painting; repairing cabinets; and replacing countertops.  The parties dispute the agreed-upon time of completion.  Unbeknownst to the homeowner at the time of contracting, the contractor had several severe physical ailments.  On multiple occasions, the homeowner expressed her displeasure with the contractor's lack of progress.  Eventually, the homeowner informed the contractor that a third party would complete the majority of the agreed-upon services.  The homeowner initiated this case by filing suit against the contractor and his wife, alleging violations of the Tennessee Consumer Protection Act.  The contractor and his wife filed a counter-claim, alleging breach of contract by the homeowner.  After a bench trial, the trial court rescinded the contract, finding a mutual mistake regarding the length of the contract term, and dismissed the parties' claims.  All parties appealed.  We reverse the trial court's decision and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed**
**and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Julie Clark, White Bluff, Tennessee, Pro Se.

George E. Copple, Brentwood, Tennessee, for the appellees, Jeffrey Givens and Wanda Givens.

**OPINION**

# I.    FACTS & PROCEDURAL HISTORY

This case stems from an oral contract for "construction services" at a property owned by Julie Clark, a veterinarian, at 269 Harpeth View Trail, Kingston Springs, Tennessee ("the property"). While the events, dates, and specifics of the agreement have been heavily disputed, our decision does not hinge on factual intricacies.

After purchasing a new home, Dr. Clark searched for quality workers to make improvements on her current property before placing it for sale. On January 12, 2016, Dr. Clark spoke with Wanda Givens about whether her husband, Jeffrey Givens, would be able and willing to perform the work.[1] Mrs. Givens indicated that Mr. Givens was a quality worker and could "do anything" she needed. The next day, Dr. Clark and Mr. Givens met at her property in Kingston Springs to discuss the initial work he was to perform. Mr. Givens performed minor plumbing work to Dr. Clark's satisfaction.[2] Because Dr. Clark was satisfied with Mr. Givens's initial performance, she decided to proceed with having him perform other tasks.

On January 14, 2016, Dr. Clark and Mr. Givens met at the property to discuss the additional duties he would perform. The two walked through the house as Dr. Clark described various improvements that she was contemplating. Both parties agree that on January 14, they formed an oral contract for Mr. Givens to: (1) paint the entire interior of the three-story house; (2) remove and repair kitchen cabinets; (3) strip, prime, and paint cabinets; and (4) replace two bathroom countertops.

Dr. Clark claims that Mr. Givens gave individual bids on each task for her to accept individually. She also claims that those four tasks were the only ones to which she agreed. According to Dr. Clark, the bids Mr. Givens gave for the agreed-upon tasks totaled $9,775. Mr. Givens claims that they also agreed for him to pressure wash the garage and driveway, paint the garage floor with epoxy, and paint the outside porch and deck. He also contends that, rather than making individual bids, he gave a single quote of $11,575 for all of the tasks—including those that are disputed. The parties disagree on the time of completion for the contract. According to Dr. Clark, Mr. Givens stated he would complete the work in two weeks. While she did not set a required end date or state that "time [was] of the essence," she claims to have indicated she needed the work done in a timely manner. In contrast, Mr. Givens claims that he estimated it would take between four and six weeks, but that he did not promise it would be done in that time. Mr. Givens testified that he believed there was no strict timeline and that he was afforded "as much time as [he] needed to do a good job." Dr. Clark gave Mr. Givens a check for $2,500 as a deposit and shortly

---

[1] Previously, Dr. Clark had learned that Mr. Givens performed work at the daycare where her grandson attended.

[2] Mr. Givens received payment for the plumbing work. This initial agreement is not the subject of this suit.

thereafter he began working.

Unbeknownst to Dr. Clark at the time of contracting, Mr. Givens had suffered from significant physical ailments since 2011. In 2011, Mr. Givens was in a work-related accident that caused him to lose almost all function in his left arm, wrist, and shoulder. Along with the inability to use his left arm, at times, Mr. Givens suffers serious headaches and has trouble seeing out of his left eye. Mr. Givens's physical limitations left him unable to work significantly since his accident. When asked why he did not tell Dr. Clark about his injuries, Mr. Givens responded, because "[Dr. Clark] did not ask." Later, he admitted that she would not have known about his injuries unless he told her and that if he did, she would not have hired him.

Dr. Clark and Mr. Givens also disagree on what transpired while he performed work at the property. On January 18, 2016, Dr. Clark checked on the property and found some progress.[3] On January 27, she went to the property a second time and was concerned by the lack of progress. When she questioned him regarding the work, Dr. Clark asserts that he informed her, for the first time, of his physical ailments. According to Dr. Clark, Mr. Givens stated he had to miss work on prior occasions due to doctors' appointments and meetings with his attorney for an ongoing worker's compensation suit related to his accident in 2011. She testified that he apologized, stated that he desperately needed the work, and promised to make significant progress the following week. Dr. Clark begrudgingly gave Mr. Givens an additional $2,000 to continue working.

On February 2, 2016, Dr. Clark returned to the property and found most of the work still unfinished, with only one coat of paint on approximately one-third of the interior. Dr. Clark became upset with the lack of progress and what she believed was poor quality of work. She testified that he apologized again and that she gave him one more week to make progress before she would hire another painter. Six days later, Dr. Clark went to the property and found no progress since her previous visit.

Dr. Clark and Mr. Givens met at the house on February 9, 2016. Displeased with the quality of work and lack of progress, Dr. Clark informed Mr. Givens that she would be hiring someone else to finish the interior painting. The parties agreed that Mr. Givens would complete the remaining jobs, including painting the doors and restoring cabinets. Dr. Clark asserts that Mr. Givens was to complete this work to help earn the $4,500 that she previously paid. Mr. Givens disagrees. Instead, he testified that he agreed to complete the remaining jobs to help salvage the contract rather than abandon it. He asserts that the February 9 interaction was the first time Dr. Clark informed him of her frustrations and

---

[3] Throughout this case, Mr. Givens has given inconsistent days for when he started to work on the property. At trial, he testified that the two entered into the verbal contract on January 14, 2016, and he began working on January 18.

intent to hire another party.[4]

Dr. Clark testified that the final interaction at the property occurred on February 23 (36 days after Mr. Clark began working). She stated that she terminated the contract on this date after she became convinced that the work would not be completed in a timely manner. Disagreeing with her assessment, Mr. Givens testified that Dr. Clark terminated the entire contract on February 15. Despite his physical limitations, Mr. Givens believes that he could have completed the contract if he was allowed to do so. He estimated that he would have needed approximately three to four additional weeks to finish all of the tasks, including the interior painting.[5]

Later, Dr. Clark spoke with Mrs. Givens and asked why she was not told about Mr. Givens's injuries. According to Dr. Clark, Mrs. Givens refused to answer and stated that she does not get involved with her husband's business.

In February 2017, Dr. Clark filed suit against Mr. and Mrs. Givens in the General Sessions Court of Dickson County. Dr. Clark asserted that she was owed a refund of $3,700 on the contract for services that were never completed.[6] Mr. and Mrs. Givens answered and filed a counter-claim for breach of the oral contract, asserting $4,500 in damages. The General Sessions Court found in favor of Mr. and Mrs. Givens, awarding them $5,075 in damages. Dr. Clark appealed to the Circuit Court.

After her appeal from General Sessions, Dr. Clark amended her complaint. In her amended complaint, Dr. Clark asserted violations of the Tennessee Consumer Protection Act ("TCPA") as grounds for recovery. In doing so, she argued that Mr. and Mrs. Givens fraudulently misrepresented that Mr. Givens was capable and able-bodied, "never once alluding to the fact that he was severely disabled." Dr. Clark asked for treble damages under the TCPA that totaled $13,500.

The case was heard before the Circuit Court on May 7, 2019. Mrs. Givens, Dr. Clark, and Mr. Givens all testified. On August 21, 2019, the trial court entered its final order. The court found that on January 14, 2016, Dr. Clark and Mr. Givens formed an oral contract for him to perform contracting services at her property. It also found that there was no "time is of the essence" clause in the oral contract and that there was no agreement as to the time of completion. As a result of the parties' disagreement on the time for completion, the court found there was a mutual mistake in forming the contract. The court

---

[4] At trial, there were varying accounts of when Dr. Clark hired replacement workers, and when they began. One dispute involved Dr. Clark's son-in-law working on the property, performing work that Mr. Givens believed he was hired to perform.

[5] We note that this additional time would place Mr. Givens's completion beyond the four-to-six week "estimate" that he allegedly gave Dr. Clark at the outset of the contract.

[6] The property is located in Cheatham County rather than Dickson, but Mr. and Mrs. Givens waived any potential venue issue.

rescinded the contract, dismissed all claims, and dismissed Mrs. Givens as a party since she was not a party to the rescinded contract. Further, the court found that the reasonable value of the services rendered by Mr. Givens was $4,500, which was the amount that Dr. Clark previously paid Mr. Givens. Therefore, neither party was awarded an additional sum. Both parties timely appealed.

## II. ISSUES PRESENTED

Dr. Clark raises four issues on appeal, which we have reworded herein:

1. Whether the trial court erred in not finding that the defendants intentionally misrepresented Mr. Givens's services;

2. Whether the trial court gave undue deference to the defendants' testimony, resulting in it awarding them damages;

3. Whether the trial court erred in deciding not to apply the TCPA for the defendants' intentional misrepresentation; and

4. Whether the trial court erred in denying the plaintiff proper compensation, including treble damages and court costs.

Mr. and Mrs. Givens present one issue in their cross-appeal, which we have also reworded:

1. In the absence of a "time is of the essence" clause, whether the trial court erred in dismissing the parties' claims and rescinding the oral contract for mutual mistake as to the time of completion.

For the reasons stated herein, we reverse the Circuit Court's decision and remand.

## III. STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). Questions of law are also reviewed *de novo* but with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (2005)). Interpreting the meaning of a contract is a legal issue that is afforded no presumption of correctness. *See Lazar v. J.W. Aluminum*, 346 S.W.3d 438, 442 (Tenn. 2011); *Barnes*, 193 S.W.3d at 498.

## IV. DISCUSSION

Before we address our decision in this case, we assure Dr. Clark that, as a pro se litigant, her arguments have been given fair consideration.

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe

*Young v. Barrow*, 130 S.W.3d 59, 62–63 (Tenn. Ct. App. 2003) (citations omitted). *See also Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015).

In contracts involving "construction services," such as the one at bar, a party's failure to complete the "project within a time for completion does *not constitute material breach* absent a provision making time of the essence." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 818 (Tenn. 2009) (emphasis added) (citing *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833 (Tenn. Ct. App. 1997)). As this Court has previously explained, "whether failing to complete performance on time constitutes a material breach depends on whether 'time is of the essence' with respect to the contract." *Groner v. On-Site Grading, Inc.*, No. E1999-00219-COA-R3-CV, 2000 WL 502843, at *4 (Tenn. Ct. App. Apr. 28, 2000). A time of completion clause is not the same as a "time is of the essence" provision. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 818. Simply agreeing on a date or time of completion, without more, will not establish that time was of the essence in a construction contract. *Sanders v. Breath of Life Christian Church, Inc.*, No. W2010-01801-COA-R3-CV, 2012 WL 114279, at *18 (Tenn. Ct. App. Jan. 13, 2012) (citing *Madden Phillips Constr., Inc.*, 315 S.W.3d at 818).

A party may prove the existence of a "time is of the essence" provision by "stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case." *Madden Phillips Constr., Inc.*, 315 S.W.3d at 818 (quoting *Groner*, 2000 WL 502843, at *4). *See also Shepherd*, 968 S.W.2d at 833. In determining the existence of a "time is of the essence" provision, the court should look at the entire agreement. *See Claiborne Hauling, LLC v. Wisteria Park, LLC*, No. E2009-02667-COA-R3-CV, 2010 WL 3219467, at *7 (Tenn. Ct. App. Aug. 16, 2010). Tennessee courts have consistently held that, generally, time is *not* of the essence in construction contracts. *See, e.g., Madden Phillips Constr., Inc.*, 315 S.W.3d at 818; *Classic City Mech., Inc. v. Potter S. E., LLC*, No. E2015-01890-COA-R3-CV, 2016 WL 5956616, at *11 (Tenn. Ct. App. Oct. 14, 2016); *Groner*, 2000 WL 502843, at *4; *Shepherd*, 968 S.W.2d at 833.

Our scope of review in this appeal pales in comparison to the multitude of issues presented to the trial court.  As we previously stated, the trial court rescinded the contract due to the parties' disagreement on time of completion.  Generally, rescission is not favored by Tennessee Courts. *Pugh's Lawn Landscape Co., Inc. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010) (citing *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 631 (Tenn. Ct. App. 2002)).  "A court may not rescind a contract for mistake unless the mistake is innocent, mutual, and *material to the transaction* and unless the complainant shows an injury." *Id.* (emphasis added).  In its final order, the trial court summarily found that the parties' "mistake" was material.

From our review, we find that the trial court's decision to rescind the parties' oral contract and dismiss the case due to a "mutual mistake" was reversible error.  The record is devoid of proof that shows the parties' oral contract included a "time is of the essence" provision.  In fact, the trial court expressly found that there was no such provision agreed to in the contract.  In the absence of a time is of the essence provision, the parties' disagreement or "mistake" as to the time of completion was immaterial to the construction contract. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 818.  Without the existence of a material mistake, the contract must be given effect. *See Pugh's Lawn Landscape Co.*, 320 S.W.2d at 261; *Gibbs v. Gilleland*, No. M2015-00911-COA-R3-CV, 2016 WL 792418, at *7 (Tenn. Ct. App. Feb. 29, 2016) (citing *Robinson v. Brooks*, 577 S.W.2d 207, 209 (Tenn. Ct. App. 1978)).  Therefore, the court erred in rescinding the oral contract.

In finding that the trial court erred in rescinding the contract, we are unable to address the remaining questions on appeal.  Despite the trial court's repeated commentary that this case presents difficult questions of law and fact, it is the appropriate forum for determining the remaining issues in this case.  As a result, we reverse the trial court's decision to rescind the construction contract and remand with instructions to make the necessary findings of fact and conclusions of law on the parties' claims.

## V.    CONCLUSION

We reverse the trial court's decision to rescind the oral contract and to dismiss the parties' claims.  We remand for further proceedings.  Costs of this appeal are taxed equally between the parties.

_____
CARMA DENNIS MCGEE, JUDGE