Allen C. CHASTAIN and wife, Jeannie
Chastain et al., Appellees,

v.

Douglas BILLINGS and wife, Martha
Billings, Appellants.

Court of Appeals of Tennessee,
Eastern Section.

June 30, 1978.

Certiorari Denied by Supreme Court
Sept. 18, 1978.

---

2. *See Moorhead v. J. C. Penney Co., Inc.,* Tenn., 555 S.W.2d 713 (1977); *Johnson v. Woman's Hospital,* Tenn.App., 527 S.W.2d 133 (1975).

Robert B. Wilson, III of Fillauer & Wilson, Cleveland, for appellants.

Roger E. Jenne of Elliott, Goode, Jenne, Varnell & Scott, Cleveland, for appellees.

## OPINION

PARROTT, Presiding Judge (E. S.).

This is an appeal by Douglas Billings and wife Martha from a decree of the Chancery Court of Bradley County rescinding a sale of real estate and awarding $66,900.00 to appellees, Allan C. Chastain and wife Jeannie.

Appellants insist the chancellor erred in finding the appellants (1) misrepresented the condition of the house, (2) erred in awarding rescission because the contract of sale was partially executory, and (3) erred in requiring appellants to file a $25,000.00 appeal bond.

On November 23, 1976, by warranty deed, the Billingses conveyed to the Chastains a new three-level house which had been constructed by Douglas Billings. It is undisputed that before the purchase the Chastains inquired of Mr. Billings and his real estate agent, Steve Calfee, as to the dryness of the first level. Both Billings and Calfee represented to the Chastains that there was no water problem and on no occasion had there been any dampness in the house.

On December 8, some two and one-half weeks after the house was purchased but before the Chastains had moved into it, during and after a rain the water came through the walls on the first level covering the entire floor area with one to one and three-fourths inches of water, saturating the carpet. It was necessary to remove the carpet from the entire area. Thereafter Mr. Billings took a part of the sheetrock off

the walls and attempted to treat the inside walls with a water repellant substance called thero-seal.

Mr. Chastain testified that on February 23, March 4, March 5, March 12 and March 13 water came into the first level of the house. Mr. Billings does not deny that he told the Chastains that there had never been any water problem in the house. At least two disinterested witnesses testified that they visited the house during construction and observed water in the first level. It is insisted by Mr. Billings that after he treated the inside walls and unstopped the underground drain, the house has had no further water problem. However, we note from Mr. Billings testimony that he has constructed four houses with basements or lower levels and each of these houses has had a water problem. There is testimony by experienced contractors that the attempted water-proofing on the inside wall would not permanently prevent water leakage.

The water on the first level was not the only problem with the house. Expert witnesses who inspected the house testified that the plumbing is substandard, electrical wiring substandard, that underneath the steps going into the first level there was plywood placed on dirt which would eventually rot. Construction around trees was substandard, no soffit ventilation, part of the house did not have siding, the heatolator in the fireplace was improperly installed, and there was no fire cap on the chimney. Another serious defect was that the chimney was not anchored and has pulled away from the wall. One witness testified that you could move the chimney with your hand.

After reviewing the testimony and examining the exhibits, we concur with the chancellor's finding that the workmanship in many areas does not meet the expected standards. Further, we concur that the house is so defectively constructed that the only equitable and fair thing to do is to grant a rescission of the sale.

We find no merit in appellant's argument that it was not true the appellant or his agents misrepresented the condition of the premises conveyed. The proof clearly shows that appellants told appellees there had been no water problem in the house when in fact there had been water problems before the sale.

It is well established that fraud and misrepresentation in the sale of real estate renders the contract voidable. *Hunt v. Walker*, 483 S.W.2d 732 (Tenn.App.1974); 91 C.J.S. Vendor and Purchaser § 54. Our Supreme Court and this Court, in cases dealing with sales of real estate, have quoted with approval from American Law Institute, Restatement of Torts (2d), Sec. 552, Tentative Draft No. 11, dated April 15, 1965, the following:

(1) One who, in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) The liability stated in subsection (1) is limited to loss suffered

(a) By the person or one of the persons for whose benefit and guidance he knows the information to be intended; and

(b) Through reliance upon it in a transaction in which it is intended to influence his conduct.

*Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970); *Hunt v. Walker*, supra.

Appellants argue that rescission should not be granted because appellants had agreed to make all necessary repairs at their expense within a period of one year from the date of purchase. It is true that if an adequate remedy of law exists, such as an award of damages, rescission will not be granted. In the instant case there is testimony from experienced contractors that the only satisfactory way of permanently stopping the seepage of water in the first level would require digging to the bottom

of the foundation and treating the walls from the outside. To do such treatment would require removing decks and other parts of the house and could only be done at unusually high costs. There is also testimony that the house walls were placed on a concrete slab without any footings. There is no explanation as to how acceptable footings could now be put under the house. We reiterate what we stated earlier that the house was so poorly constructed that the only fair and equitable relief is rescission of the contract.

The chancellor's order requiring appellant to file a $25,000.00 appeal bond in no way affects the merits of this cause. If the chancellor was in error, it is harmless error. T.C.A. 27–117. The bond has been made, the appeal perfected and appellants have had their case reviewed.

In the chancellor's decree awarding the Chastains $66,900.00 plus interest paid from the date of sale and directing the Chastains to quit-claim their interest in the said property to the defendants, we note that the chancellor did not require the Chastains to pay reasonable rent for the two and one-half months they occupied the house but did take into consideration such by not requiring the Billingses to reimburse the Chastains for the $1500.00 expense incurred in closing the sale.

It results we affirm the chancellor's decree with costs taxed to the appellants.

GODDARD and NEARN, JJ., concur.