IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2010 Session

## EDMOND CATO ET AL. V. D. L. BATTS ET AL.

Appeal from the Chancery Court for Davidson County
No. 07-1317-III     Ellen H. Lyle, Chancellor

No. M2009-02204-COA-R3-CV - Filed February 17, 2011

Purchasers of home filed this action against the sellers for negligent misrepresentation and fraudulent misrepresentation for the failure to disclose defects in the home. The trial court found for the purchasers on their claim of negligent misrepresentation but denied their claim of fraudulent misrepresentation and their request for rescission. Purchasers appealed contending the trial court erred by not finding fraudulent misrepresentation and partially denying their motion to alter or amend the judgment in which they sought to introduce new evidence. We affirm the ruling of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Shawn P. Sirgo and Curtis R. Harrington, II, Nashville, Tennessee, for the appellants, Edmond and Duanna Cato.

Edward J. Gross, Nashville, Tennessee, for the appellees, D. L. Batts and Helen Batts.

## OPINION

This action arose from the sale of a home located at 629 Vanoke Drive in Madison, Tennessee. The plaintiffs, Edmond and Duanna Cato, purchased the home from D.L. Batts and his wife Helen Batts on November 10, 2005. Prior to purchasing the home, the Catos reviewed the Tennessee Residential Property Condition Disclosure provided by the sellers, they visited the house on several occasions, and they had a home inspection performed. The Catos stated that the home appeared in good condition. On the last visit to the residence, a

home inspection was performed by Lurid Vinson, who noted no major problems with the home.

The Catos did not move into the home immediately after the purchase but began making some improvements on the home including removing wallpaper, painting, and removing ivy from the exterior walls of the residence. During this time period, the Catos began to notice defects in the home. In the living room of the house, a large crack ran down the wall; this crack had previously been obscured by a large mirror. The Catos also discovered large cracks in the basement walls of the house, which they deemed to be more significant than the "settling cracks" disclosed to them during the negotiations of the purchase of the home. The Catos had been unable to view these cracks due to the significant amount of clutter in the basement in addition to shelving, a pegboard, and a workbench, which had covered the walls. When they removed the ivy from the exterior walls of the house, they noticed additional cracks and that the walls were bowing. They moved into the residence in February of 2006 and the problems with the home continued.

When the Catos turned on the pool for the first time, in the summer of 2006, they soon discovered that the pool was unable to hold water and that their water bill increased significantly. Mrs. Batts, during the sale of the home, represented that the pool was operational but had a "small leak." The Catos hired American Leak Detection to determine the full extent of the problems with the pool. The company determined that the pool was structurally unsound, that there were multiple leaks in the pool, and that there were problems with the pump and the filter.

Early in the spring of 2007, the Catos began to experience flooding in the basement; the amount of water was so significant Mr. Cato referred to it as "Lake Okeechobee." Thereafter, anytime it rained water would come into the basement. The water appeared to come from areas in the basement and from around the chimney. The Catos also discovered that the cracks in the basement walls were becoming wider and new cracks appeared.

Although the Catos experienced numerous and serious problems with the house and pool not long after purchasing the house from the Batts, no significant defects or malfunctions were disclosed on the Tennessee Residential Property Disclosure.[1] The Disclosure provided to the Catos represented that the only "Defects / Malfunctions" of which the sellers were "aware" concerned "Windows," "Exterior Walls," "Basement," and "Double Paned or Insulated Window and or Doors" and those defects were explained by Mrs. Batts as being minor. As she explained on the Disclosure, the disclosed defects were limited to:

---

[1]Mr. Batts did not sign the Residential Property Disclosure; the only signature on the Disclosure was that of "Helen D. Batts."

"Some Broken Panes, Settling Cracks, Some Settling Cracks Interior, Some Water Comes In Basement Near Front Porch (Hard Rain) Pool Has Small Leak."[2]

In April 2007, the Catos hired a contractor to investigate the various problems with the home. The investigator found numerous and serious problems with the house. He determined that the house was structurally unsound and that steel I-beams had been installed in an attempt to support the basement walls, which were bowing in. The contractor also discovered that untreated wood blocks had been inserted between the walls and the I-beams to provide further support.

In June 2007, the Catos filed this action against Mr. and Mrs. Batts, asserting claims for both negligent and fraudulent misrepresentation due to the failure to disclose the structural defects with the home and the condition of the pool.[3] The Catos sought monetary damages and/or rescission of the contract.

A bench trial was held on March 9-11, 2009. At trial, the Catos testified and they presented the testimony of two experts on the structural defects in the home, one expert on the problems with the swimming pool, and the testimony of their real estate agent, Angel Sims Wright. Mrs. Batts, her son Dennis Batts, and her real estate agent, Wanda Barker, testified for the defense. Mr. Batts, who suffered from severe dementia when the case came to trial, did not testify.

William Elliston, a licensed structural engineer, testified to the structural problems with the home. Elliston testified that the freestanding retaining wall, which was the "front" basement wall in the home, had large cracks and was bowing inward due to improper construction and "significant" violations of the Building Code. Improper drainage and waterproofing techniques in the basement walls was also causing the serious leakage into the home. He also stated that it was "virtually certain" that the conditions had occurred steadily over the life of the house and would certainly have been observable during the life of the home, as evidenced by repairs made to the foundation walls. While steel I-beams were installed on the two adjacent walls, the front basement wall also required reinforcement. Elliston stated that the house was structurally unsound to such an extent that without repair, the walls would collapse. In his report, Elliston also stated that the other problems with the

_____

[2]In Section "B" of the Disclosure form, the "Defects / Malfunction" of which Mrs. Batts was aware were to be disclosed by checking "YES" next to the respective boxes, e.g. "Basement." Immediately below the section where the boxes appeared, the disclosure form stated "If any of the above is/are marked YES, please explain" and blank lines were provided for the explanation to be written on the form.

[3]The original action also named Lurid Vinson, the home inspector, and Wanda Barker, the Batts' realtor. However, both parties were later dismissed from the action.

residence such as warping of the floors and distortion of door openings were "likely a result from the inward movement of the front masonry wall, which has transferred a matching movement into the structural framing of the home." Elliston recommended numerous repairs in order to remedy the situation including installing additional beams, removing the stud walls to examine the existing beams, installing an exterior french drain, modifying the exterior grades between the front of the home and the street, and installing a secondary drainage system. These repairs would prevent further movement of the wall, eliminate the majority of water entering the home, and prevent the movement of the upper structure of the home.

Rob Myers from United Structural Systems, Inc., also testified regarding the structural problems in the house. Myers was the initial contractor called to inspect the home and provide an estimate on the repairs. Myers noted the same structural problems caused by lateral earth pressure on the front basement wall, which caused the cracking and bowing. Like Elliston, Myers testified that additional steel beams would need to be installed and the drainage issues would need to be corrected. Myers also recommended excavating to relieve the pressure on the basement wall. Myers testified that the Catos would most likely need to perform further repairs outside of the initial estimate and that costs could very likely increase as the work was performed and the contractors encountered additional problems. The proof presented at trial demonstrated that $12,000 was needed to fix the problems with the front basement wall and $9,850 for the left and rear walls of the structure to correct for "vertical settlement."

Victor Mickelson, from American Leak Detection, testified regarding the pool. Following his inspection of the pool, Mickelson found leaks in the return line plumbing of the pool, in the skimmer line, and in the pump room, in addition to structural cracks in the pool. Mickelson also determined that the main drain line of the pool was inoperable, that the pump was not functional, and that the skimmer had been plugged with a ball, which he testified could not occur accidentally. Mickelson stated that when the pumps were on the pool could leak between one to two inches of water per day. The repairs to make the pool functional cost $4,000 and Mickelson recommended additional repairs in the future.

The Catos also testified on their own behalf to the problems experienced with the home. Both Catos stated that they were never informed of the problems with the home prior to the purchase and both stated that they would not have purchased the home if they had been made aware of the defects. The Catos' realtor Angel Sims Wright, who was also Mrs. Cato's sister, testified that she was never informed of any defects in the home and was unaware of the existence of any steel I-beams installed in the home.

Mrs. Batts testified that she sold her home due to her husband's deteriorating health. Mr. Batts suffered from severe dementia.[4] Mrs. Batts testified that she filled out the Tennessee Residential Property Disclosure form in September 2005, with the assistance of her real estate agent Wanda Barker, and that she answered all the questions honestly and did not attempt to conceal any problems. She stated that she did not provide any information regarding the structural problems or the steel I-beams installed in the basement because she forgot about the I-beams. Mrs. Batts testified that during the visit when the parties were in the basement she pointed to the walls and informed them that there were steel beams because the wall had a tendency to come in.[5] Mrs. Batts also stated that she had not undertaken any repairs or attempted to conceal any problems with the home. However, she admitted that she tried to keep the home in good condition and had painted the home a few months prior to listing the home. Mrs. Batts acknowledged that due to her husband's condition, in recent years, she would have been the person to perform any repairs, such as filling cracks with caulk.

Mrs. Batts further testified that she did not provide any additional information on the Final Sellers Property Disclosure dated November 10, 2005 because it was a repair that had been performed more than thirty years ago and she believed the problem had been corrected. At trial, she acknowledged that "quite a bit" of water would come into the basement when it rained, but claimed to have never seen standing water, though, she stated she would immediately vacuum the water or clean it up if she saw it coming into the home. Mrs. Batts also stated that the pool was operational when she turned it off for the winter.

Wanda Barker, the real estate agent for the Batts, who was also a good friend of Mrs. Batts's daughter, testified that Mrs. Batts informed the Catos of the beams in the basement wall as a "preventative measure" on the final visit to the residence. Ms. Barker claims that she did not notice any defects that she believed should be disclosed and believed that any verbal statement by Mrs. Batts was sufficient and that no additional information was required on the Final Sellers Disclosure.

Dennis Batts, the Batts' son, testified that he had installed the beams in the home with his father during the 1970s. The home inspector, Lurid Vinson, also testified stating that he

---

[4]Mr. Batts was unaware of his surroundings and did not help her with the sale of the home. Mrs. Batts had not, however, been named his conservator at the time of the sale and Mr. Batts's signature was on the documents.

[5]The Catos denied any such statement by Mrs. Batts.

had not noticed any indication of structural defects in the home but stated the basement had been filled with clutter.

The trial court ruled from the bench at the close of the trial, and the court's findings are incorporated into an order entered on April 13, 2009. The court ruled in favor of the Catos on their claim of negligent misrepresentation, finding that the Batts failed to disclose "sufficient and complete information" regarding the defective condition of the basement wall and the condition of the pool. As for the intentional or fraudulent misrepresentation claim, the trial court found that Mrs. Batts had forgotten about the I-beams because she was distracted by her husband's substantial health issues and that she was not sufficiently counseled by her real estate agent to provide additional information. The trial court denied the Catos' request for rescission of the contract.

For their compensatory damages, the court awarded the Catos $30,081.13, which included reimbursement for repairs submitted by the Catos in the amount of $9,756.13, $12,000 to fix the front basement wall as estimated by United Structural, and $4,000 should additional problems with the wall arise. The trial court denied the Catos' request for attorney's fees.

The Catos and the Batts each filed a Tenn. Rule Civ. P. 59 motion to alter or amend the judgment. The Catos sought to submit proof of additional expenses for a total recovery of $162,031.16 and for the trial court to reconsider its decision on rescission of the contract. For their part, the Batts moved to alter or amend the judgment upon the basis the trial court erroneously included $9,756.13, to which the Catos were not entitled, in the original award of damages.

Following a hearing on the motions to alter or amend, the trial court found that the Catos were entitled to an additional $20,000 in damages for the installation of additional I-beams in the basement based upon the testimony of the two experts presented during the trial; however, the court denied the Catos' request to submit additional proof of damages. The trial court granted the Batts' motion and reduced the award of damages by $9,756.13 upon the finding those expenses should not have been awarded because they were unrelated to the condition of the defective basement wall. The Catos filed a timely appeal.

## ISSUES

The Catos raise several issues. First, they contend the trial court erred in finding only negligent misrepresentation and not fraudulent misrepresentation. Second, the Catos contend that the trial court erred in denying in part their motion to alter or amend. Lastly, they assert that justice requires either rescission, the award of additional damages, or a new trial. For

their part, the Batts contend that the trial court erred in excluding the testimony of William Steven Butler. We shall address each issue in turn.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

### I.
#### INTENTIONAL OR FRAUDULENT MISREPRESENTATION

The trial court held that Mrs. Batts did not intentionally or fraudulently deceive the Catos regarding the condition of the house or pool; instead, the court found her acts and omissions constituted negligent misrepresentations. The Catos contend the acts and omissions of Mrs. Batts constituted intentional or fraudulent misrepresentations; thus, the trial court erred in finding she did not make intentionally or fraudulently misrepresent the condition of the house and pool to induce them to purchase the Batts' home.

The trial court found that Mrs. Batts' acts and omissions regarding her duty to disclose known defects in the house were negligent, not intentional or fraudulent, because she either forgot or was distracted due in part to her age and to Mr. Batts' poor health. The trial court's ruling was also based on the finding that Mrs. Batts' real estate agent did not sufficiently counsel Mrs. Batts to include additional information in the Disclosure. As for the pool, the court found that Mrs. Batts "did not have the assistance of her husband in evaluating the condition of the pool, and that Mrs. Batts may not have realized the extent to which she was to make revelations regarding the property."

The essential elements of the torts of negligent misrepresentation and that of intentional or fraudulent misrepresentation are substantially different. To sustain a cause of action for "negligent" misrepresentation:

[T]he plaintiff must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information. To sustain a cause of action for negligent misrepresentation, the plaintiff must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information. *Strange v. Peterson*, No. W1999-00489-COA-R3-CV, 2001 WL 29461, at *2 (Tenn. Ct. App. Jan.11, 2001) (citing *Merriman v. Smith*, 599 S.W.2d 548, 556-57 (Tenn. Ct. App.1979)). Negligent misrepresentation occurs when a defendant, acting in the course of her business, profession, or employment, or in a transaction in which she has pecuniary interest, supplies faulty information meant to guide another in their business transactions; the defendant fails to exercise reasonable care in obtaining or communicating information; and the plaintiff justifiably relies upon the information provided by the defendant. *Id*. (citing *Robinson v. Omer*, 952 S.W.2d 423 (Tenn.1997) (citing Restatement (Second) of Torts § 552)).

*Biancheri v. Johnson*, No. M2008-00599-COA-R3-CV, No. M2007-02861-COA-R3-CV, 2009 WL 723540, at *7 (Tenn. Ct. App. Mar. 18, 2009).

Conversely, to sustain a cause of action for "intentional or fraudulent" misrepresentation,[6] the plaintiff must prove the following essential elements:

(1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation falsity-that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the

---

[6]In this jurisdiction the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999); *see also Elchlepp v. Hatfield*, 294 S.W.3d 146, 149 n.1 (Tenn. Ct. App. 2008).

misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact.

*Murvin v. Cofer*, 968 S.W.2d 304, 310 (Tenn. Ct. App.1997) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App.1990)). If the plaintiff is only seeking an award of damages based upon the intentional or fraudulent misrepresentations, the burden of proof is by a preponderance of the evidence. *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008) (citing *Capital Mgmt. Partners v. Eggleston*, No. W2004-01207-COA-R3-CV, 2005 WL 1606066, at *8 (Tenn. Ct. App. July 7, 2005)). However, if the plaintiff is also seeking rescission of the contract and/or punitive damages based upon intentional or fraudulent misrepresentations, the law requires the plaintiff prove the claims by clear and convincing evidence. *Id.* (stating if the plaintiffs are seeking damages only, not to reform or rescind a contract due to the alleged fraud or intentional misrepresentation, the preponderance of the evidence standard of proof applies); *see also Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 530-31 (Tenn. Ct. App. 2001).

In this case, we find that the evidence does not preponderate against the trial court's finding that the Catos successfully proved their claim of negligent misrepresentation but did not prove their claim of intentional or fraudulent misrepresentation. The trial court made the specific factual finding that Mrs. Batts did not intentionally misrepresent the conditions of the home but forgot about the existence of the I-beams, which had been installed in the home somewhere between twenty to thirty years prior to the sale, and that Mrs. Batts was distracted by the deteriorating condition of her husband. Additionally, the trial court found that the Batts' realtor did not counsel Mrs. Batts to provide additional information. Further, Mrs. Batts informed the Catos that "some" water entered into the basement when it rained and that the pool had a small leak, both of which were true but were also substantial and material understatements of the water problems and the leaks in the basement and pool. Considering the evidence in its totality, we have concluded that the evidence does not preponderate against the trial court's findings of negligent misrepresentations.

As for Mr. Batts, there is nothing in the record to indicate that he made any intentional or fraudulent misrepresentations; this is due to his dementia and lack of mental capacity to knowingly make a false representation. The only participation of Mr. Batts in the sale was his signature on the Final Sellers Disclosure and the closing documents related to the sale of the home.[7] Moreover, Mrs. Batts testified that her husband's mental capacity was seriously deteriorated and that he did not participate or help her with the sale of the home and the Catos do not dispute this fact.

---

[7]Mr. Batts did not sign the initial Tennessee Residential Property Disclosure Form.

Therefore, the evidence does not preponderate against the trial court's finding of negligent misrepresentation but not intentional or fraudulent misrepresentation.

## II.
### MOTION TO ALTER OR AMEND

For their second issue, the Catos contend the trial court erred in denying, in part, their motion to alter or amend the judgment.

Following the entry of the judgment, the Catos filed a motion to amend the judgment by increasing the award of damages based on the evidence in the record. They also sought leave of court to submit new evidence to prove additional costs of repairs. The trial court agreed to review the award of damages based on the evidence in the record but denied the motion to introduce additional evidence. The court awarded the Catos an additional $20,000 in damages for the cost to install I-beams in the basement walls. The court determined this figure based upon the testimony of two expert witnesses, Elliston and Myers. Elliston testified that the existing steel I-beams in the home were improperly installed, but he did not state an amount for the repair and  installation of I-beams to correct the problem. However, the court noted that Mr. Myers testified that the installation of I-beams in the front basement wall, which currently had no I-beams, would cost $12,000. Using the testimony of the two experts, the trial court determined that the Catos were entitled to an additional $24,000 for the installation of I-beams in the two adjacent basement walls. The court reduced this award by $4,000, which the court had previously awarded in case additional repairs should arise.

The court denied the other relief sought in the Catos' motion to alter or amend, specifically, the request to introduce evidence that was not introduced at trial to establish additional damages of $95,216.16 for a total award of $162,031.16. The Catos contended this evidence was previously unavailable. The trial court found that the Catos had failed to demonstrate under the factors set forth in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000), that the new evidence was important.

This court reviews a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment under the abuse of discretion standard. *Whalum v. Marshall*, 224 S.W.3d 169, 174 (Tenn. Ct. App. 2006) (citing *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)). Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Id*. (quoting

*State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Id*. (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

The trial court correctly applied the factors set forth in *Harris v. Chern* in making its decision to deny the Catos' Rule 59 motion to introduce new evidence.[8] The factors set forth in *Harris* for consideration of when to allow new evidence are:

> 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Harris*, 33 S.W.3d at 745.

The trial court found that the Catos only demonstrated one of the *Harris* factors, that the new evidence was important. As to the other factors, the trial court found that factors one and two did not weigh in favor of the Catos. The court did not give credit to the Catos' claim that due to the booming economy they were unable to locate an expert because the Catos were able to present the testimony of two experts during the trial. The court also found that the introduction of the evidence would be unfairly prejudicial to the Batts because the new evidence could support a claim for rescission and the Batts had sold the house approximately four years prior. Therefore, the trial court did not abuse its discretion in denying the motion to introduce new evidence. We therefore affirm the trial court's denial of the motion to alter or amend.

### III.
### RESCISSION, ADDITIONAL DAMAGES, AND A NEW TRIAL

The Catos contend that justice requires either rescission, the award of additional damages, or a new trial and that the trial court erred in failing to grant such relief.

---

[8]The *Harris* factors were set forth by our Supreme Court to examine new evidence as applied to Tenn. R. Civ. P. 54.02 motions. *Harris*, 33 S.W.3d at 745. However, our courts have applied these same factors to motions to alter or amend under Tenn. R. Civ. P. 59.04 when the issue is the introduction of new evidence. *Grace v. Mountain States Health Alliance*, No. E2000-03031-COA-R3CV, 2001 WL 1131725, at *3 (Tenn. Ct. App. Sept. 25, 2001) (citing *King v. City of Gatlinburg,* No. E2000-00734-COA-R3-CV, 2001 WL 483419, at *3 (Tenn. Ct. App. May 8, 2001)) (other citations omitted).

We have already determined that the trial court did not err in finding that the Catos proved their claim of negligent misrepresentation by a preponderance of the evidence but they did not prove their claim of intentional or fraudulent misrepresentation by a preponderance of the evidence. A party is not entitled to the remedy of rescission of a contract unless they prove the essential elements of their claim by clear and convincing evidence. *See Elchlepp*, 294 S.W.3d at 150; *see also Estate of Acuff*, 56 S.W.3d at 530-31. Further, to set aside or rescind a deed, "the proof must be clear, cogent and convincing." *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) (citing *Pugh v. Burton*, 166 S.W.2d 624 (Tenn. Ct. App. 1942)). The Catos did not prove any of their claims by clear and convincing evidence. Thus, they are not entitled to rescission of the contract.

It should also be noted that rescission of a contract is not looked upon lightly and is only available under the most demanding circumstances and depends upon the individual facts and circumstances of each case. *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993) (citing *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951); *Robinson v. Brooks*, 577 S.W.2d 207 (Tenn. Ct. App. 1978)). "If the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission." *Id.* (citing *Leake v. Gray, Shillinglaw & Co.*, 226 S.W.2d 298 (Tenn. 1949)). Additionally, if an adequate remedy of law exists, such as an award of damages, rescission will not be granted. *Chastain v. Billings*, 570 S.W.2d 866, 868 (Tenn. Ct. App. 1978). Four years have passed since the sale of the home when this case went to trial and it has not been established that the parties could be returned to the status quo that existed when the Catos purchased the property from the Batts. Accordingly, had the Catos proved their claim by clear and convincing evidence, which they did not, rescission would not be an appropriate remedy. *See Lamons*, 909 S.W.2d at 801.

For the above reasons, we affirm the trial court's finding that rescission was not the appropriate remedy in this action.

The Catos also argue that justice requires an increased damages award if rescission is not granted. The amount of damages awarded by a trial court is a question of fact. *Moody v. Lea*, 83 S.W.3d 745, 751 (Tenn. Ct. App. 2001). If the case is tried without a jury, "we review the amount of damages awarded by the trial court with the presumption that it is correct, and we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded." *Id.* (citing *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App.1998) (citing Tenn. R.App. P. 13(d); *Armstrong v. Hickman County Highway Dep't,* 743 S.W.2d 189, 195 (Tenn. Ct. App.1987))).

We find the evidence in the record is insufficient to support an award of additional damages. The trial court awarded the full amount of damages stemming from the defects and proven by the Catos based upon competent evidence presented during the trial and the evidence in the record does not preponderate against the trial court's award of damages.

## IV.
### PROFERRED TESTIMONY OF WILLIAM STEVEN BUTLER

The Batts contend the trial court erred in excluding the testimony of William Steven Butler. We have determined it did not.

"Trial courts have broad discretion with respect to the admission or exclusion of evidence and the enforcement of local rules." *Pennington v. Pennington*, No. M2007-00181-COA-R3-CV, 2008 WL 1991117, at *3 (Tenn. Ct. App. May 7, 2008) (citing *Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, *4 (Tenn. Ct. App. Jan. 9, 2008); *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983)). An appellate court will find an abuse of discretion "only when the trial court applies an incorrect legal standard, reaches an illogical decision, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citing *Francois v. Willis*, 205 S.W.3d 915, 916 (Tenn. Ct. App. 2006)).

In this action, the trial court excluded the testimony of Mr. Butler due to the failure of the Batts to inform the Catos of this witness prior to the trial as the trial court's Local Rule § 29.01 requires. Twentieth Judicial District Local Rule § 29.01 provides that opposing counsel shall hold either an in-person meeting or a telephone conference and disclose the names of witnesses no less than seventy-two hours prior to trial. The Batts did not disclose the identity of Mr. Butler until he was called as a witness. The trial court found that it would be unfair to the Catos to allow Mr. Butler's testimony based upon the failure to give the Catos prior notice of the witness.

> Generally, where a party has not given the name of a person with knowledge of discoverable matter, the court should consider the explanation given for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance. In the light of these considerations, the court may permit the witness to testify, or it may exclude the testimony, or it may grant a continuance so that the other side may take the deposition of the witness or otherwise prepare to meet the testimony.

*Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981).

In *Pennington,* the appellant appealed the exclusion of one of its witnesses based upon Twentieth Judicial District Local Rule § 29.01. *Pennington*, 2008 WL 1991117, at *3. Applying the analysis in *Strickland*, we upheld the exclusion of the witness due to the appellant's failure to comply with Local Rule 29.01. *Id*. at *5. Applying the same reasoning here, we find the trial court did not abuse its discretion in excluding the testimony of Mr. Butler.

We also note that the testimony offered by Mr. Butler related to blasting that occurred during the construction of a nearby Wal-Mart in 2006. Mr. Butler's testimony pertained to damage to his home and also to other homes in the neighborhood, the latter being inadmissible hearsay. Moreover, the proffer of evidence reveals that Mr. Butler is a competent musician but it does not reveal that he has any expertise concerning the cause and effect of damages to residential structures resulting from nearby blasting. Accordingly, if admissible, his testimony would have little relevance to the issues on appeal.

For the above reasons, we find the trial court did not abuse its discretion in excluding the testimony of Mr. Butler.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellants, Edmond and Duanna Cato.

_____

FRANK G. CLEMENT, JR., JUDGE