# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 15, 2011 Session

## CASE HANDYMAN SERVICE OF TENNESSEE, LLC v. HELEN MARIE HARBEN LEE

**Appeal from the Chancery Court for Davidson County**
**No. 071868I      Claudia Bonnyman, Chancellor**

---

**No. M2011-00751-COA-R3-CV - Filed June 13, 2012**

---

Homeowner retained Contractor to remodel her residence and paid Contractor two out of three installments as provided in the contract.  Homeowner was not satisfied with Contractor's work and refused to pay the final installment.  Contractor sued for breach of contract and Homeowner filed a counterclaim asserting Contractor breached the contract by failing to perform the job in a workmanlike and reasonable manner.  Homeowner also claimed Contractor violated the Tennessee Consumer Protection Act by engaging in unfair and deceptive practices.  The trial court dismissed Contractor's complaint and held Contractor breached the contract by failing to perform the work in a reasonable and workmanlike manner.  The court found Contractor was not liable for double or treble damages under the Tennessee Consumer Protection Act because Homeowner did not prove its deficiencies were intentional or willful.  Homeowner appealed, claiming the trial court erred in denying her motion to amend her counterclaim to assert a claim for rescission and erred in holding Contractor did not violate the Tennessee Consumer Protection Act.  We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Helen Marie Harben Lee, Nashville, Tennessee, Pro Se.

Case Handyman Services of Tennessee, LLC did not participate in this appeal.

# OPINION

This is a breach of contract case in which Helen Marie Harben Lee hired Case Handyman Service of TN, LLC ("Case Handyman") to remodel a recently acquired condominium. Case Handyman alleged Ms. Lee breached the contract by refusing to pay the final $18,433.70 due on the contract, and Ms. Lee alleged Case Handyman breached the contract by failing to perform the contract in a workmanlike manner, causing her to hire other contractors to complete the project and redo Case Handyman's defective work. The trial court concluded Case Handyman breached the contract and awarded Ms. Lee damages. Ms. Lee appeals the trial court's opinion, claiming she is entitled to rescind her contract with Case Handyman, and if she is not entitled to rescission, she should be awarded more damages than the trial court awarded her.

## I. BACKGROUND

Ms. Lee and Case Handyman entered into a construction contract on October 10 or 11, 2006, for the remodeling of Ms. Lee's condominium in Nashville, Tennessee (the "Contract"). The Contract was very specific about the work Case Handyman was to do in each room of Ms. Lee's residence and provided that Ms. Lee would pay Case Handyman a total of $56,282.55. Ms. Lee was to pay Case Handyman one-third upon signing the Contract, one-third when Case Handyman began the work, and one-third upon completion of the project.

Ms. Lee paid Case Handyman the first two installments as the Contract specified. As the work progressed, Case Handyman prepared three change orders that Ms. Lee agreed to and signed on October 24, 2006, November 2, 2006, and January 3, 2007. Pursuant to the terms of these change orders, Ms. Lee paid Case Handyman an additional $11,515.33.

Case Handyman alleges it completed its work on Ms. Lee's residence on March 12, 2007 and demanded its final payment due under the Contract, but that Ms. Lee refused to make the final payment. Ms. Lee denies Case Handyman completed the job described in the Contract on March 12 or at any other time and contends Case Handyman is not entitled to any more compensation.

Case Handyman filed suit against Ms. Lee alleging breach of contract and sought to recover the final payment due under the Contract, which it claimed was $18,433.70. Case Handyman also sought to enforce a mechanics' and materialmen's lien pursuant to Tenn. Code Ann. §66-11-101 *et seq*. As an alternative theory of recovery to breach of contract, Case Handyman alleged unjust enrichment.

Ms. Lee filed an Answer in which she denied any money was owing to Case Handyman and filed a Counterclaim in which she asserted five causes of action. First, Ms. Lee alleged Case Handyman failed to construct the project in a workman-like manner and was liable to her for negligence and negligent supervision. Second, Ms. Lee alleged Case Handyman breached the Contract by performing only a portion of the project and failing to perform the work it did in a manner consistent with the standards in the construction industry. Third, Ms. Lee alleged Case Handyman intentionally made representations to her that its work would be completed in accordance with or above the standards in the construction industry and that Case Handyman knew or should have known when it made these representations that they were false. Ms. Lee alleged Case Handyman intentionally double charged her by including in the change orders work that was already provided for in the Contract and that these acts constituted a violation of the Tennessee Consumer Protection Act. Fourth, Ms. Lee alleged Case Handyman was liable for fraudulent misrepresentation. Ms. Lee's fifth and final cause of action was for punitive damages, which Ms. Lee contended she was entitled to based on Case Handyman's intentional, malicious, and outrageous conduct. Ms. Lee asserted as damages the amount she had to pay other contractors to remedy Case Handyman's defective work, the value of the lost use of her home, punitive damages, and other damages to be proven at trial.

Ms. Lee attempted to amend her Counterclaim prior to trail to add a prayer for rescission. The trial court considered Ms. Lee's proposed amendment on the first day of trial, before the parties gave their opening arguments. After explaining that rescission is not available as a remedy based on the facts of Ms. Lee's case, the court denied Ms. Lee's motion to amend.

A bench trial was held on three separate days in September and December 2010 and in January 2011. Case Handyman presented testimony and evidence supporting its argument that it performed construction work on Ms. Lee's residence in a reasonable and workmanlike manner and that Ms. Lee breached the Contract when she refused to pay the balance of what she owed under the Contract. Ms. Lee represented herself and presented testimony and numerous items of documentary evidence in support of her claim that Case Handyman failed to perform its work in a manner that would be acceptable to the reasonable homeowner. Ms. Lee presented photographs of Case Handyman's work as well as documentation of the money she paid to other contractors she hired to complete the work Case Handyman began, the work Case Handyman was supposed to do but never initiated, or, in some cases, to rip out and redo the work Case Handyman did that was not up to par.

## II. TRIAL COURT'S FINDINGS

Following the parties' presentation of proof and closing arguments, the trial court made the following findings of fact from the bench:

> [T]he plaintiff and the homeowner entered into a written contract on October 10 or 11, 2006. The homeowner made the first one-third installment payment on October 11, 2006. . . .
>
> . . . . .
>
> [T]he parties agreed that certain work would be done at the homeowner's . . . residence. The contract did not have a completion date. There were three change orders and the homeowner paid fully for each change order. The homeowner made two of the three installments due under the contract terms but she refused to make the last payment.
>
> The homeowner was a credible witness. She has a good memory and pays attention to detail. She was very unhappy with the work done at her place and she took numerous photographs in March and April and May of 2007 to show the substandard work.
>
> . . . . .
>
> As for the homeowner's valid complaints about substandard work, the Court finds the following was substandard, that is, it appears to the Court to be highly defective and not acceptable by the reasonable person. These matters were not corrected by the time the plaintiff's employees arrived at the homeowner's home in March of 2007. The homeowner did carry her burden of proof by exhibiting photographs which were taken in the spring of 2007 after the plaintiff left the job.
>
> As for the living room - - and the Court stated before there's a lot of detail here, so a very fact intensive case, and the Court is not required to search for additional problems or to search for items that should have been paid for or were not. . . .
>
> . . . . .
>
> Removal and repair of dentil molding. The molding is clumped with

-4-

caulking or drywall mud. The molding is joined with the following section of molding by separation and cracks. Other pieces of the dentil molding are simply missing and have not been replaced. There were problems with the baseboards. The carpet installation had bad seams and was unsightly.

As for the entry which is also called foyer, the closet door and trim were substandard. The closet doors would not close. The sprinkler head was sawed off which meant that the tiles in the ceiling had to be replaced - - sometimes had to be replaced. There was a dark colored switch plate in the foyer entry rather than the ivory switch plate.

As for the kitchen, the kitchen cabinets needed at least one more coat of paint. The hinges were painted indicating a very quick job. The paint job did not cover the wood. The junction box in the cabinets was visible rather than boxed or removed. The microwave cabinet was not caulked after painting or before painting. There's a hole above the microwave in the cabinet. The light switch areas are cut into the stone, but some of the switches do not completely cover the area by the switch plate. The lighting under the kitchen counters exposes long electrical cords. The grouting in that area is unsightly and messy. It looks like there's some drywall mud that was put up around the cords to hide the area where it goes into the cabinets. A reasonable person would not accept that work. At the side of the microwave on the kitchen wall, the grouting is poor. There are holes in the grouting. I'm not talking about holes in the tile there, but holes in the grouting.

As for the bedroom, again, looking at substandard matters, the closet door and trim were substandard. The carpet installation seams are bad. Any area where the carpet meets the tile within the whole Windsor Towers condominium, the connection is not smooth but looks very irregular and incomplete.

As for the bathroom, the grouting along the stone tile was falling out. There were holes in the grouting around the towel bar and around the grouting in the shower so that water will go inside the wall. The holes around the stone are simply not filled in with adequate grout. There is some defective tile but the Court does not find there are very many pieces of defective tile. The new stone tile was poorly placed around the toilet. That is a very unsightly arrangement and somebody should have caught that. A reasonable person would not accept that placement. Some of the stone tile in the shower was installed backwards. Some of the shower is missing backer board.

As for the hallway, again, speaking only of substandard items, the closet door is substandard, would not close. The electrical box moved by the plaintiff's electrician did damage to the wall and that was not repaired.

And back for a moment to the kitchen, I believe it was the kitchen in which the capping of the drain line to the air conditioning caused the ceiling tiles to get wet and need replacing. I believe that was in the foyer.

I've talked about the hallway. Generally there was no trash collection during the construction. Trash was left in the residence in March of 2007 when the visit was made. I've already stated the areas where the carpet and the tile joined together were substandard. There's no meshing there. There's no effort to have any kind of smooth transition.

And now I'm going to address the damage figures that the homeowner supplied. Again, I'm still in the factual part of the case. Exhibit 38 has a number of items that the homeowner paid for that should have been taken care of by plaintiff and were not. And looking at these dates and when these things were done, I want the parties to understand that the Court is thinking about the $18,000 that was not paid as the third installment. The numbers that the Court is now discussing are not going to be awarded to the homeowner in addition to the $18,000, but these items paid for by the homeowner justify the dismissal of the plaintiff's lawsuit.

Moving the garbage disposal to the correct side of the sink, based upon the testimony in the case, the Court believes that the homeowner is entitled to be reimbursed the money that she spent to get that corrected. She replaced the laundry hall closet and bedroom closet doors which cost her almost $1,000. She installed three rolling shelves in the kitchen cabinets. She repaired the bedroom closet carpet for $100. She repaired the bathroom sink. She had a painter come in and do the painting that should have been done in the first instance for $945.

She generated the expense of carpentry and tile repair in the amount of $4,430 and the Court finds that number is justified given all of the problems with carpentry and the tile. The Court finds however that the homeowner is not entitled to new tile throughout the residence. And the Court took out those numbers and doesn't subtract those from the $18,000 that would otherwise be due.

The item on March 17 of 2006: Repair the wall, oven support, the foyer ceiling, the drywall and the hall door, $1,325, the Court finds that she would be entitled to have that deducted. The painter in the amount of $662 she is entitled to have deducted. The Court finds that she is not entitled to replace all her carpet. Unfortunately the carpet that was used did not satisfy her but the Court can't find that that was a breach of contract. The Court does not order damages for painting the walls. Plumbing repair to cap the AC drain line is $154.45. That's justified. The repairs to the foyer ceiling, $44.05 are justified along with replacing the foyer ceiling because of the damaged capped line in the amount of $210. That's justified. Closing the holes above the foyer ceiling and kitchen microwave is justified at $222.25. The new bedroom closet shelves are justified because the carpenter had to go into the bedroom closet, break through the closet to get to the tile. And then there's this minor figure of $159.57 which is replacing the kitchen light fixtures and plates. And the Court finds those items equal, approximately $10,000. There is also the hotel stay.

And the Court is finding that the plaintiff is not entitled to additional funds to the additional amount because the plaintiff did not show, A, that it completed its contract or, B, exactly what would be due and owing it. And the Court is not required - - there are numerous appellate decisions which say the Court is not required to search for these items which the plaintiff did not prove.

On the ultimate issue of which party was liable for breaching the Contract, the trial court explained:

Was there a breach of contract by the homeowner? [T]he Court finds the homeowner did not breach the contract.

. . . . .

The issue of no notice or opportunity to cure is just not relevant in this case because the homeowner was consistently telling the contractor that the work had not been done, the work that had been done was defective. So there was unfortunately for the plaintiff lots of notice that curing needed to take place.

And as for the defendant's claim, the plaintiff has alleged that the homeowner was negligent. The plaintiff has alleged that the homeowner has

-7-

breached the contract. And the Court finds that the plaintiff was negligent in some of the particulars in that it generated and provided substandard work.

The Court finds in that regard there was a breach of contract because the contract implies a warranty that the workmanship will be standard and acceptable in the industry. And the Court finds that in terms of what the Court has found to be substandard, just simply would not be accepted by the reasonable person or paid for by the reasonable person.

So the Court finds there was a breach of contract; however, the damages that the Court has noted in this case are not - - certainly are not double damages. The homeowner is not entitled to get damages for negligence and damages for breach of contract.

The homeowner was not able to carry her burden that the plaintiff intentionally provided substandard work or deceptively provided substandard work as the Tennessee Consumer Protection Act would require. The plaintiff did not - - the homeowner did not carry her burden to show that the homeowner - - that the plaintiff moved forward in a fraudulent way. The homeowner tried to show - - made a good stab at trying to show that the sprinkler change order was fraudulent and unfair; however, the homeowner could not carry her burden to provide the detail to support that kind of claim.

The Court cannot and does not award punitive damages because the issues in this case do not rise to that level and the Court cannot find that the plaintiff's behavior was willful. Consequently the Court does not award attorneys' fees to either side.

. . . . .

Besides ruling in this case that the plaintiff's lawsuit is dismissed and the plaintiff is not entitled to the third installment, the Court does not add damages to that. When the homeowner is not required to pay that additional $18,000, all of her damages are subsumed within this $18,000. . . .

### III. ISSUES ON APPEAL

Ms. Lee was not satisfied with the trial court's ruling and filed a Notice of Appeal. Ms. Lee argues on appeal that the trial court erred in denying her motion to amend her Counterclaim to add a prayer for rescission and in failing to award her as damages the full

amount she paid Case Handyman for its substandard, unacceptable work and for the work that was promised but not done. Ms. Lee also contends the trial court erred in holding that Case Handyman did not violate the Tennessee Consumer Protection Act and in failing to award her attorney's fees, pre-judgment interest, and treble damages as permitted in the statute.[1]

## IV. STANDARD OF REVIEW

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

## V. MOTION TO AMEND COUNTERCLAIM TO ADD A PRAYER FOR RESCISSION

Ms. Lee argues she is entitled to rescind the Contract because Case Handyman provided substandard, unacceptable work and failed to perform all the work it promised to do. Rescission is an equitable remedy that is rarely granted and is only available in certain circumstances, such as those involving fraud or undue influence. *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996)*; Healthcare Management Resources, LLC v. Carter*, 2007 WL 173907, at *7 (Tenn. Ct. App. Jan. 23, 2007). "[I]f an adequate remedy at law exists, such as an award of damages, rescission will not be granted." *Richards*, 926 S.W.2d at 572 (citing *Chastain v. Billings*, 570 S.W.2d 866 (Tenn. App. Ct. 1978)); *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993).

Rescission is designed to put both parties in the position they were in when the contract was made. "If the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission." *Chamberlain*, 909 S.W.2d at 801. The remedy of rescission is not available as a matter of right. The trial court has discretion to determine whether rescission is warranted in a given situation, and the trial court's decision will not be reversed on appeal absent a showing that the trial court abused its discretion. *Vakil v. Idnani*, 748 S.W.2d 196, 199-200 (Tenn. Ct. App. 1987) (citing *Early v. Street*, 241 S.W.2d 531 (1951) and *McMillan v. American*

---

[1]Case Handyman filed a Notice of Administrative Dissolution with this Court and did not file an appellate brief or send a legal representative to present an oral argument.

*Suburban Corp.*, 188 S.W. 615 (Tenn. 1916)).

As the Tennessee Court of Appeals has explained:

> A contract may be rescinded for fraud, *Simmons v. Evans*, 206 S.W.2d 295 (Tenn. 1948), *A. Landreth Co. v. Schevenel*, 52 S.W. 148 (Tenn. 1899), or even for innocent misrepresentations that are material and induce one of the parties to enter into the agreement. *Cannon v. Chadwell*, 150 S.W.2d 710 (Tenn. Ct. App.1940). Rescission, however, is not looked upon lightly and will be awarded only under the most demanding circumstances. *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951). The decision to grant rescission rests in the sound discretion of the trial court, *Vakil v. Idnani*, 748 S.W.2d 196 (Tenn. Ct. App. 1987), and if an award of damages would be an adequate remedy, rescission will not be granted. *Chastain v. Billings*, 570 S.W.2d 866 (Tenn. Ct. App.1978).

*Douglas v. Foster*, 2002 WL 83605, at *1 (Tenn. Ct. App. Jan. 22, 2002).

Ms. Lee relies on several Tennessee cases in which rescission was awarded to support her argument that the trial court erred in denying her request to amend her complaint. The facts of the cases Ms. Lee relies on are distinguishable from the facts we have here, however, and therefore do not advance her cause.[2]

---

[2] In *Robinson v. Brooks*, 577 S.W.2d 207, 207-08 (Tenn. Ct. App. 1979), purchasers of a house discovered after the sale was consummated and they were living in the house that the house was built on an inappropriate soil base that was moving underneath the house, causing the house to lean and be dangerous to inhabit. The court found both parties to the contract were mistaken about the safety and soundness of the house. The parties' mutual mistake concerning the condition of the soil and safety of the house meant there was no meeting of the minds, and therefore, no enforceable contract. *Id.* at 208-09. At the purchasers' request, the trial court rescinded the parties' agreement and placed them in the position they occupied before the house was transferred to the purchasers. *Id.* at 210-11. In *Farrell v. Third Nat'l Bank in Nashville*, 101 S.W.2d 158, 164-65 (Tenn. Ct. App. 1937), a trustor was allowed to rescind her trust agreement when it became apparent that she was mistaken about the existence of consideration supporting her decision to create the trust. In *Brungard v. Caprice Records*, 608 S.W.2d 585 (Tenn. Ct. App. 1980), the court rescinded the parties' contract because the plaintiff was fraudulently induced to enter the contract; the terms she had been promised were not the terms contained in the ultimate contract. *Id.* at 588-90. Finally, in *True v. Deeds & Son*, 151 Tenn. 630 (Tenn. 1925), the purchaser of a plow and harrow was permitted to rescind his contract pursuant to explicit language of the Uniform Sales Act upon proof of the seller's breach of warranty. *Id.* at 633-36.

The facts of this case demonstrate that rescission is not appropriate. To the extent that Ms. Lee was dissatisfied with Case Handyman's performance, money damages are an adequate remedy. Since some contracted work has been performed, to her satisfaction, and her condominium altered as a result, it is impossible now to place the parties in the position they were in before the contract was made. The pre-contract status quo cannot be restored.

Insofar as Ms. Lee's argument for rescission rests upon her allegations of fraud, the trial court found that Case Handyman did not engage in fraud. Upon review of the record, we agree with the trial court that the evidence does not support a finding of fraud. Ms. Lee was not able to prove that Case Handyman did not intend to carry out its contractual obligations when it entered into the Contract with Ms. Lee, as she must to show fraud. The most Ms. Lee was able to prove was that the individuals who did the actual work on her residence were unskilled or just plain sloppy. Bad work, however, does not in and of itself, prove fraud.[3]

A party seeking rescission must prove she is entitled to that remedy by clear and convincing evidence. *Cato v. Batts*, 2011 WL 579153, at *9 (Tenn. Ct. App. Feb. 17, 2011)). After considering all the facts of this case, we hold the trial court properly exercised its discretion in refusing to permit Ms. Lee to amend her Counterclaim to assert a prayer for rescission.

## VI. SUFFICIENCY OF DAMAGES

Ms. Lee seeks rescission because she views that as a way of having the money she has paid Case Handyman restored to her. Her real complaint is that she ended up paying Case $46,000 and the work she got was not equal to that amount. In essence, she asserts she is entitled to a greater amount in damages.

Ms. Lee provided the trial court with an itemized list describing the work she hired others to do to correct Case Handyman's errors along with the expenses she incurred for the additional work. Ms. Lee testified about everything she did to correct Case Handyman's deficiencies. The trial court carefully studied the proof Ms. Lee submitted and addressed each item on Ms. Lee's list. The court explained, for example, that while Ms. Lee was entitled to be reimbursed for the labor and materials required to repair and replace defective tiles and grout, she was not entitled to the expense she incurred in replacing all the tiles Case Handyman installed that were not defective or otherwise problematic. Additionally, while

---

[3]Rescission may be appropriate in circumstances where there is undue influence, but Ms. Lee does not allege she was subjected to undue influence, and we do not find evidence of undue influence in the record.

she was entitled to be reimbursed for some painting expenses to correct Case Handyman's substandard work, she was not entitled to the expense of repainting more than was necessary because Ms. Lee decided another color would look better than what she had initially chosen. Moreover, while Ms. Lee's damages should include the expense necessary to correct the deficiencies in the carpet installation, she was not entitled to a brand new carpet on the basis that she was not satisfied with the quality of her initial selection.

The trial court carefully reviewed the proof submitted by Ms. Lee, including the proof of expenses to repair the substandard work. The court made the factual findings set out above. The court concluded that Ms. Lee had proved approximately $10,000 she paid for items that should have been taken care of by Case Handyman. The trial court also noted that Ms. Lee was entitled to the cost of her stay in an extended stay hotel due to Case Handyman's delay in getting her condominium ready for occupation. The court then explained, "This amount will not be awarded to the homeowner in addition to the $18,000 balance due under the contract. . . . The court took out those numbers and doesn't subtract those from the $18,000 that would otherwise be due."

In other words, the trial court awarded Ms. Lee $18,000. That award took the form of relieving Ms. Lee from her obligation for that amount under the contract. This amount is greater than the actual monetary damages she proved. Some of Ms. Lee's arguments that she should get money back from Case Handyman are based upon her claims that Case charged too much compared to their costs for items. However, Ms. Lee agreed to the contract price and agreed to work order costs as presented to her. To the extent the quality of the work was not acceptable, she is entitled to damages. However, she cannot change the terms of her contract because she thinks she agreed to pay too much for the work if it was satisfactory.

Ms. Lee also asserts that there was additional substandard work that was not corrected because she could not afford those extra costs. However, she did not prove the amount of damages she incurred from those items. In her brief, she acknowledges that the cost of repair for those items is unknown.

The evidence does not preponderate against the trial court's determination of the damages to be awarded Ms. Lee.

### VII. TENNESSEE CONSUMER PROTECTION ACT CLAIM

Ms. Lee next asserts the trial court erred in ruling Case Handyman did not violate the Tennessee Consumer Protection Act, codified at Tenn. Code Ann. § 47-18-101 *et seq*. Ms. Lee argues that Case Handyman engaged in unfair or deceptive acts or practices while working on her residence and that it failed to demonstrate either good faith or fair dealing

as required by Tennessee law.

Tenn. Code Ann. § 47-18-109 provides in pertinent part:

(a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

. . . . .

(3) If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper, except that the court may not award exemplary or punitive damages for the same unfair or deceptive practice.

"Knowingly" is defined as "actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception." Tenn. Code Ann. § 47-18-103(6).

 "A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 786 (Tenn. Ct. App. 2010) (citing *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App.2005)). The determination of whether a defendant has committed an unfair or deceptive act is a question of fact, and not every breach of contract rises to the level of an unfair or deceptive act within the meaning of the Tennessee Consumer Protection Act. *Poole*, 337 S.W.3d at 787. As the *Poole* court explained:

Although every breach of contract is arguably "unfair" in the colloquial sense, . . . the TCPA envisions something more than the simple incompetent performance of contractual duties.

*Poole*, 337 S.W.3d at 787 (citing *Anderson v. Lamb's Auto Serv., Inc.*, 2009 WL 1076729, at *4 (Tenn. Ct. App. Mar. 5, 2009) (itself citing *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991))).

[A]lthough a breach of contract claim and a [TCPA] claim may arise from the same course of conduct, they are separate and distinct causes of action, each with its own separate elements and defenses [citations omitted]. As we held in *Hall v. Hamblen*, No. 2004 WL 1838180 (Tenn.Ct.App. Aug. 16, 2004) ... breach of contract and violation of the [TCPA] are two different causes of action, and existence of one does not necessarily establish the existence of the other. *Id*. at *4. In order to be successful under the [TCPA] it must be proven that "there was some deception, misrepresentation or unfairness, regardless of any breach of contract." *Id*. [citation omitted]. A breach of contract or warranty is not and of itself a deception, misrepresentation or unfairness under the [TCPA].

*Wilson v. State Farm Fire & Cas. Co.*, 799 F. Supp.2d 829, 841-42 (E. D. Tenn. 2011) (quoting *Office Furniture & Related Servs. Inc. v. United Const. Corp.*, 2005 WL 378707, at *5 (Tenn. Ct. App. Feb. 16, 2005)).

Ms. Lee contends Case Handyman engaged in unfair and deceptive practices by failing to perform quality workmanship in its tiling and grouting in the kitchen and bathroom, failing to reconfigure the garbage disposal to fit the holes cut in the granite countertop, laying the carpet in a haphazard manner, and failing to install the kitchen shelves as set forth in the Contract, among other deficiencies. We agree Case Handyman breached the Contract by failing to perform the tasks they agreed to perform in a workmanlike manner, but its breach does not necessarily rise to the level of an "unfair or deceptive act or practice" as that phrase is used in the Tennessee Consumer Protection Act.

The trial court concluded that Ms. Lee did not carry her burden to prove Case Handyman intentionally or deceptively provided substandard work, as the Tennessee Consumer Protection Act requires. Upon a review of the testimony and documentary evidence presented at trial, we find the evidence does not preponderate against the trial court's conclusion. *See New Life Corp. of America v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 928 (Tenn. Ct. App. 1996) (nothing in the record suggests unfair or deceptive acts or practices to support alleged violation of Consumer Protection Act). As set out above, establishing a TCPA violation requires proof of additional elements to those necessary to show a breach of contract.

Accordingly, we affirm the trial court's judgment denying Ms. Lee's claim that Case Handyman is liable for violating the Tennessee Consumer Protection Act.

## VII. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment denying Ms. Lee's motion to amend her Counterclaim to add rescission as a prayer for relief, concluding that Case Management did not violate the Tennessee Consumer Protection Act, and awarding Ms. Lee damages in the amount of the last payment due under the contract. Costs of this appeal are assessed against the appellant, Helen Marie Harben Lee, for which execution shall issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE